[Civ. No. 4307. Second Appellate District, Division One.—May 12, 1925.]

## CHARLES B. WEBSTER et al., Respondents, v. CLARA PARRA, Appellant.

[1] BROKER'S COMMISSIONS—RENDERING SERVICES AT OWNER'S REQUEST —EVIDENCE—FINDING.—In this action to recover compensation for services alleged to have been rendered by the plaintiffs as brokers in the sale of the furniture, fixtures, and goodwill of a certain hotel, the evidence showing that plaintiffs were licensed brokers, that they talked with defendant concerning the matter of the sale of her hotel and secured her price therefor and informed her that

---

1. See 4 R. C. L. 248.

they had a prospective purchaser for the same, and made an appointment with her, at which time they brought to her hotel a prospective purchaser who subsequently did purchase upon terms satisfactory to defendant, that defendant stated to the purchaser that one of the plaintiffs was her agent, and that she expected to pay him a commission, and that subsequent to the consummation of the deal she made statements to the effect that she would pay the plaintiffs a commission for their services in the transaction, was sufficient to support the finding of the trial court that the plaintiffs rendered services to defendant at her special instance and request.

[2] ID. — SALE OF PROPERTY — WHEN WRITING NECESSARY. — In the matter of the sale of real property, a written memorandum of employment is necessary under our statute; but this provision does not apply to a sale of personal property.

[3] ID.—LISTING PROPERTY WITH BROKER—INFERENCES—PROCURING OF PURCHASER—REASONABLE COMPENSATION.—Where the owner of the furniture, fixtures, and goodwill of a certain hotel lists the same for sale with a broker, and subsequently the broker brings to the owner one who purchases on terms satisfactory to the owner, the only reasonable inference to be drawn from such facts is that there was an employment by the owner of the broker to procure a purchaser for the property, and, where such an employment appears, the law implies that a reasonable compensation will be paid.

[4] ID. — RIGHT TO COMPENSATION — PROCURING CAUSE OF SALE. — A broker, before he is entitled to compensation for his services, must show that he produced a purchaser who was ready and willing to make the purchase on terms satisfactory to the owner, and that he was the efficient agent or procuring cause of the sale, but it is not necessary for the broker to prove that he was the first one to bring to the attention of the purchaser the fact that the property in question was for sale and the price thereof—all that is required being that he shall be the efficient agent or procuring cause for the sale.

[5] ID.—PROCURING CAUSE OF SALE—EVIDENCE.—In an action to recover compensation for services alleged to have been rendered in the sale of the furniture, fixtures, and goodwill of a certain hotel, where the plaintiffs show that they went to the home of the purchaser, and also had interviews with her adviser, for the purpose

2.   Necessity that agent's authority to purchase or sell realty be in writing to enable him to recover compensation for services, notes, 13 Ann. Cas. 977; Ann. Cas. 1915A, 1133; 44 L. R. A. 601; 9 L. R. A. (N. S.) 933.  See, also, 4 R. C. L. 249, 300; 4 Cal. Jur. 560.

4.   When broker has earned commission, notes, 28 Am. St. Rep. 546; 139 Am. St. Rep. 225.

5.   When real estate broker is considered as procuring cause of sale, note, 44 L. R. A. 321.  See, also, 4 Cal. Jur. 583.

of inducing her to purchase, that plaintiffs made the appointment to see the property and interview defendant and accompanied said adviser to the hotel and continued with him until he agreed to buy and made a deposit, they show that they were the efficient agent or procuring cause for the sale; and their right to compensation is not defeated by the fact that, at a prior date, said legal adviser looked at the property but, upon finding the, price quoted by defendant too high, left and did nothing further about it.

[6] ID.—WHEN COMPENSATION EARNED—CLOSING OF TRANSACTION.— Where the broker has brought the minds of the parties together and the contract has been entered into for the purchase and sale of the property, the law does not require the broker to render any particular service thereafter.

---

(1) 4 C. J., p. 877, n. 80; 9 C. J., p. 654, n. 41, p. 655, n. 42, 43; 13 C. J., p. 263, n. 74.   (2) 9 C. J., p. 558, n. 9, p. 559, n. 15. (3) 9 C. J., p. 580, n. 49, p. 655, n. 42.   (4) 9 C. J., p. 611, n. 6, p. 613, n. 11, p. 618, n. 33.   (5) 9 C. J., p. 656, n. 44.   (6) 9 C. J., p. 591, n. 20.

APPEAL from a judgment of the Superior Court of Kern County.  Howard A. Peairs, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Kaye & Siemon and L. E. Nathan for Appellant.

Walter Osborn for Respondents.

HAHN, J., *pro tem.*—This action was brought to recover $550 for services alleged to have been rendered by the plaintiffs as brokers in the sale of the furniture, fixtures, and goodwill of a certain hotel.  The complaint contains two counts, the first alleging an express contract of employment, and agreement on the part of defendant to pay a fixed sum of $550 for the services.  The second count alleges the rendering of the services by the plaintiffs at defendant's request, and that the reasonable value of the services rendered is the sum of $550.

The case, tried by the court without a jury, resulted in findings of fact and judgment thereon in favor of the plaintiffs on the second count.

---

6. Time for payment of broker's commission, note, **Ann. Cas.** 1914D, 395.  See, also, 4 **Cal. Jur.** 596.

[1]   The appellant bases her appeal on the ground of the
insufficiency of the evidence to support the findings and the
judgment of the court.   In support of this contention two
particular points are urged: First, that "there was no
agreement for the employment of plaintiffs as brokers, or
to pay them any commissions"; second, that "the plaintiffs
did not find the purchaser or render defendant any assis-
tance in making the sale, and there was therefore no consid-
eration for any implied or express promise to pay a com-
mission."   The evidence bearing upon these two propositions
is in conflict and, under the well-established rule, if there
is any evidence sufficient to support the findings, the judg-
ment will be affirmed.

Charles B. Webster, one of the plaintiffs, testified that
during the month of March, 1921, he was engaged with one
J. H. Jordan as a partner in the real estate and brokerage
business in the city of Bakersfield.   At that time, the de-
fendant, with whom he had an extended acquaintance, was
conducting the Euclid Hotel and was desirous of selling her
lease on the hotel, together with the furniture and fixtures
therein contained; that on March 16, 1921, one F. W. Nighbert
came to his office, representing himself as the adviser of one
Mrs. Loeva A. Voll, who was desirous of purchasing a hotel or
rooming-house, and entered into a discussion with him
(Webster) about the Euclid Hotel.   Webster stated further
that previous to this visit of Mr. Nighbert, he had had some
arrangement (what it was does not appear) with the defend-
ant about the hotel.   While Nighbert was in his office on
the morning of March 16th, Webster called the defendant
over the telephone and asked her price for the hotel, which
she gave him; that thereupon Webster informed her that
he desired to bring someone up to look at the hotel, and the
appointment was made for 2 o'clock that afternoon.   At
the appointed hour Webster and Nighbert called at the hotel
and had a conversation with the defendant concerning its
sale and purchase.   They went through the hotel, examined
the furniture, and generally inquired as to matters having
a bearing upon the question of its sale; that upon the com-
pletion of the investigation that afternoon, Nighbert stated
that he was willing to make a deposit of $500 on account of
the purchase of the hotel for Mrs. Voll, the price agreed
upon being $11,000.   He then drew a receipt for the deposit,

which was signed by the defendant. But before the deposit was made, the defendant asked Mr. Nighbert if he was in any sense an agent in the transaction, and stated to him that she wanted it understood that she did not wish to pay two or three commissions; that Mr. Webster was her agent. Whereupon Mr. Nighbert assured the defendant that he was not acting in the capacity of an agent, but merely assisting Mrs. Voll in financing the purchase of the place, and that he had no claim for a commission. Whereupon, Nighbert gave his check for $500 and received the receipt from the defendant, setting forth the purchase price and the purpose of the deposit; that subsequently, after the deal was closed, Webster called the defendant over the telephone and asked about payment of the commission; that the defendant replied that she would be down to his office in a day or two and settle with him. A few days later, the defendant not having settled with Webster, he met her at the Euclid Hotel and again spoke to her about payment of the commission; that the defendant again stated that she would be down to see him in a day or two. A third time, upon Webster meeting the defendant, he raised the question of the payment to him of his commission, and she replied, as she had previously, that she would see him in a day or two. Finally, apparently with some impatience, Webster called the defendant over the telephone and asked her if she did not intend to pay the commission; whereupon she stated that she thought $550, which was five per cent of the purchase price, was too much; that she thought $500 was sufficient. In reply Webster stated that he would not have a controversy over $50, and that he would be willing to accept $500 in settlement of his claim for commission. However, the defendant never sent her check; nor did she make any payment to plaintiff on account of his claim.

Mr. F. W. Nighbert, a witness on behalf of the plaintiffs, testified that he, as a friend and adviser of Loeva A. Voll, called at the office of Webster & Jordan on the morning of March 16th and discussed with Mr. Webster the matter of the purchase by Mrs. Voll of the Euclid Hotel; that he (Nighbert), prior to the morning of March 16th, had been informed that the hotel in question might be purchased, and in order to acquire further information he had called on the defendant at the Euclid Hotel and made some inquiries of

her; that on that occasion the defendant had stated that her price was $12,000, and, after looking over the hotel, he (Nighbert) stated that he left and did nothing further about buying the hotel at that time. At the time he was in the office of the plaintiffs on the morning of March 16th, Webster called the defendant and talked with her over the telephone about a sale of the hotel, and stated that he would like to bring someone, at an appointed time, to look over the hotel with a view to its purchase. The hour was fixed at 2 o'clock that afternoon, and he, together with Webster, went to the hotel. After some continued conversation with the defendant and a more detailed examination into the hotel and the furnishings, he (Nighbert) stated that he was will- to make a deposit on behalf of Mrs. Voll for the purchase of the hotel and furnishings at $11,000, which was the price agreed upon. In accordance with this proposal, he gave a check to the defendant and received a receipt therefor; that subsequently, on behalf of Mrs. Voll, he paid the balance of the purchase price and the transaction was completed.

Loeva A. Voll, a witness on behalf of the plaintiffs, testified that Mr. Nighbert had made some inquiry for her concerning the purchase of the hotel several days previous to March 16th, when the deposit was made; that he advised her prior to that date that he had seen the defendant and that she would not talk of any price less than $12,000. Later and prior to March 16th, she had seen Mr. Jordan, one of the plaintiffs, who told her that he thought the hotel could be purchased for $11,000; that on the morning of either March 15th or March 16th—it is not clear from the transcript—plaintiffs Webster and Jordan called upon Mrs. Voll at her home and there discussed the matter of her purchase of the hotel; that subsequent to the making of the deposit in her behalf by Mr. Nighbert she, with plaintiffs Webster and Jordan, went to the Euclid Hotel and made an inventory of all the furniture and furnishings; that on this occasion she met and talked with the defendant at the hotel; that subsequent to the completion of the transaction she testified that she talked with the defendant with regard to the payment of a commission to the plaintiffs, and that in that conversation she (the defendant) stated that she owed plaintiffs the money for the commission. The witness,

Mrs. Voll, stated that she definitely asked the defendant if she was paying the plaintiffs a commission and that she stated that she "supposed she was"; and when she (the witness) stated that Mr. Webster had evidently been up to the hotel looking for her (the defendant), the defendant replied: "I suppose he will hound me to death until he gets the money."

The defendant was the sole witness on her own behalf, and denies that she made any agreement with the plaintiffs or either of them requesting them or employing them to act as brokers for her in the sale of the hotel. She testified that Mr. Nighbert called on her one morning and made some inquiry concerning the hotel. She states that she told Mr. Nighbert the hotel was for sale for $11,000. She seemed to think that Mrs. Voll accompanied Mr. Nighbert on the occasion of this visit. The defendant, giving her conversation with Mr Nighbert on the morning of March 16th, testified: "I didn't figure I wanted to sell, had decided not to sell. I think he said for whom he was inquiring. The morning of the 16th he was there. But I am sure Mrs. Voll was there, but she is just as sure she was not; I don't know. I told him I would sell for $11,000, but I had already told Mr. Webster to bring his party at 2 o'clock, so that after 2 o'clock I would see them, if Webster's party didn't take it. Just before that, he (presumably Webster) told me, he called me, said he would bring a party at 2 o'clock. That is all he said, asked if it was for sale, said he would bring a party at 2 o'clock. I told him the price was $11,000. Nothing was said about commission. Nothing was said about his being an agent. I didn't know he was an agent."

The defendant, testifying further, stated that when Webster came to keep his appointment and brought Mr. Nighbert with him, she stated that Mr. Nighbert had been to see her before, and that she expected Webster to bring someone else. Thereupon Mr. Webster and Mr. Nighbert asked if they could look through the hotel, and the defendant accompanied them, taking them and showing them various rooms and the furniture. The defendant admitted having one conversation over the telephone with plaintiff Webster concerning a commission; but denied the other three conversations testified to by Webster. On the occasion that she talked with him over the telephone, she stated that

she refused to pay him a commission, alleging that she did not think she owed him anything and that he had not earned a commission. She also denied the conversation testified to by Mrs. Voll in which she (the defendant) was alleged to have made the statement that she owed Webster a commission.

Considering appellant's first proposition, the query arises: Is there sufficient evidence to support the court's finding that the "plaintiffs rendered services to the defendant at defendant's special instance and request"? There is evidence that, first, plaintiffs were licensed brokers; second, that they talked with the defendant concerning the matter of the sale of her hotel and secured her price therefor and informed her that they had a prospective purchaser for the same, and made an appointment with her, at which time they brought to her hotel a prospective purchaser who subsequently did purchase upon terms satisfactory to the defendant; third, that she stated to the purchaser and to her adviser that plaintiff Webster was her agent, and that she expected to pay him a commission; and, fourth, that subsequent to the consummation of the deal she made statements that she would pay the plaintiffs a commission for their services in the transaction. Manifestly there is sufficient evidence to support the finding of the court that the plaintiffs rendered services to the defendant at her special instance and request.

A mutual consent is necessary to the existence of an agreement. When the plaintiff Webster talked with the defendant over the telephone concerning the sale of her hotel and gave the price for which she was willing to sell and made an engagement with him to go over the property with the prospective purchaser, the only reasonable deduction to be made is that the defendant was desirous of having the plaintiff secure for her a purchaser for her property, and her conduct was in effect a proposal that he find a customer for her. In turn, Webster accepted her proposal to find a customer for the hotel at the price of $11,000; and pursuant to an appointment made therefor, he brought the prospective customer to the defendant, and the sale was immediately consummated and the defendant received the benefits of the purchase by the customer brought by the plaintiff.

While appellant admits the circumstances of the conversation with the plaintiff on the morning of March 16th relative to the sale and her price and the appointment for the afternoon, she contends that she did not know that plaintiffs were brokers. A careful examination of the defendant's testimony could not possibly justify a construction or inference that the defendant believed, in her conversation or negotiations with the plaintiffs, that she was dealing with them as customers. It appears clearly from her testimony that she understood the inquiry made by the plaintiffs and their efforts were in behalf of a prospective customer, and that she understood the appointment with her for the afternoon was for the purpose of meeting a prospective customer. At no point in her testimony does it appear that she considered that Mr. Webster was making inquiries with a view to purchasing the hotel himself.

Furthermore, it appears from the testimony that before the deposit was accepted by the defendant on behalf of Mrs. Voll, she made inquiry to ascertain whether or not Mr. Nighbert, who was making the deposit for Mrs. Voll, considered himself an agent in the transaction and by reason thereof would make a claim for a commission. When Mr. Nighbert replied that he was not acting as an agent, but simply as a friend of the purchaser, the defendant replied that Mr. Webster was her agent and that she did not wish to find herself in a position where she would be obligated to pay more than one commission.

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." (Civ. Code, sec. 1589.) It is a well-known custom in the matter of listing properties for sale with brokers that owners simply inform the brokers that they wish to sell and the price for which they will sell. [2] It is true, in the matter of a sale of real property a written memorandum of employment is necessary under our statute; but this provision does not apply to a sale of personal property. [3] Where the listing is made, whatever may be the method, and subsequently the broker brings to the owner one who purchases on terms satisfactory to the owner, the only reasonable inference to be drawn from such

facts is that there was an employment by the owner of the broker to procure a purchaser for his property.

And, of course, where such an employment appears, even though there be no agreement as to the amount of the compensation, the law implies that a reasonable compensation will be paid. This principle is so fundamental and well established that no authorities need be cited in support of it. It is not urged by the appellant that the amount of the judgment is an unreasonable amount of compensation for the services.

We have examined the authorities cited by the appellant in her brief in support of her contention; but none of these authorities hold contrary to the views here expressed,—in fact, most of them deal with the question of a written agreement or memoranda involved in the sale of real estate.

Appellant further contends that the plaintiffs did not find a purchaser, nor did they render the defendant any assistance in making the sale. It does appear from the evidence that Mr. Nighbert, having had information from other sources that the hotel in question was for sale, called at the hotel on the Monday previous to March 16th and at that time interviewed the defendant relative to a sale of the hotel. It appears also from the testimony of Mr. Nighbert that the price the defendant quoted to him was $12,000, and that after a short interview he left and did nothing further about it. It seems that subsequently he, as well as Mrs. Voll, learned from Mr. Jordan, one of the plaintiffs, that the property could be purchased for $11,000; and on the morning of March 16th Mr. Nighbert went to the office of the plaintiffs for the purpose of taking up with them the matter of securing the property for $11,000, or, perchance, for a less sum. [4] The well-established rule is that a broker, before he is entitled to compensation for his services, must show that he produced a purchaser who was ready and willing to make the purchase on terms satisfactory to the owner, and that he was the efficient agent or procuring cause of the sale. (*Zeimer* v. *Antisell*, 75 Cal. 512 [17 Pac. 642].) Under this well-established rule, it is unnecessary for the broker to prove that he was the first one to bring to the attention of the purchaser the fact that the property in question was for sale and the price thereof. What is required is that he shall be the efficient agent or procuring cause for

the sale. In other words, it must appear that his efforts had to do with the meeting of the minds of the seller and buyer. [5] The evidence of this case clearly brings the plaintiffs within that rule; for it appears that plaintiff Webster went to the home of Mrs. Voll, and also had interviews with Mr. Nighbert, her adviser, for the purpose of inducing Mrs. Voll to purchase and Mr. Nighbert to advise her to purchase; that he made the appointment for the purchaser and accompanied him to the hotel and continued with him until Mr. Nighbert agreed to buy and made a deposit.

[6] Appellant urges in support of her contention that the plaintiffs did not render her any service in closing the deal after the deposit was made, that the deal was finally consummated, as far as payment of the balance of the purchase price is concerned, without the presence of the plaintiffs; this being accomplished at a bank. We do not understand that the law requires the broker to render any particular service after he has brought the minds of the parties together and the contract has been entered into for the purchase and sale.

From the foregoing, it appears that there is sufficient evidence to support the findings and judgment of the court, the judgment is affirmed.

Conrey, P. J., and Curtis, J., concurred.