[Civ. No. 5391.   First Appellate District, Division One.—May 17, 1926.]

## B. G. BAIL, Plaintiff, Respondent, and Appellant, v. C. W. GLANTZ, Defendant, Appellant, and Respondent.

[1] BROKER'S COMMISSIONS—EFFICIENT CAUSE OF SALE—WHEN COMPENSATION EARNED.—Under a contract giving a real estate broker the exclusive right, for a limited time, to sell real property and providing that, when said broker shall have produced a purchaser on the terms stated by the owner, or other terms acceptable to the owner, or if the owner deals either before or after the expiration of the contract with any person to whose attention the property was brought through the efforts or services of said broker rendered during the life of the agreement, the owner will pay to said broker a commission of all over the specified selling price, the broker has earned his commission when it is shown that he was the efficient

---

1.   See 4 Cal. Jur. 584, 585; 4 R. C. L. 304.

cause of the sale; and his rights are the same whether his activities constitute the origin or the ending of a continuous series of negotiations leading to the successful consummation of the sale.

[2] Id. — Meeting of Minds — Proximate Cause — Consummation of Sale by Principals.—Under such a contract, it is not enough that the broker contribute indirectly or incidentally to the sale by imparting information which tends to arouse interest, but it is sufficient if it be established that he set in motion a chain of events which without break in their continuity caused the buyer and seller to come to terms, that his efforts constituted the proximate cause of the meeting of the minds of the principals; and he will not be deprived of his commissions because the negotiations which are brought about and partially carried on by him are afterward completed by the parties themselves or through someone else.

[3] Id.—Efficient Cause of Sale—Completion by Owner—Estoppel. Under such a contract it is necessary for the broker to prove that he was the efficient or procuring cause of the sale; in other words, it must appear that his efforts had to do with the meeting of the minds of the seller and buyer, but if after he initiates the negotiations the seller takes into his own hands the completion of the sale, the broker is so completely discharged from responsibility in the premises that the seller is estopped to contend against the broker's claims for commissions that the broker has not produced a purchaser who is ready, able, and willing to make the purchase.

[4] Id.—Procuring or Inducing Cause—Prime Object of Employment—Evidence—Findings—Appeal.—The expression "procuring and inducing cause" as used in the books refers to the cause originating from a series of events that, without break in their continuity, result in the prime object of the employment of the agent; and in any event the question of whether or not the sale is primarily the result of the broker's efforts is one of fact, and the trial court's conclusions thereon will not be disturbed on appeal if there be substantial evidence to sustain them.

[5] Id.—Efficient Cause of Sale—Findings—Evidence—Appeal.— In this action to recover a real estate broker's commission, the evidence showing the acts of plaintiff looking toward a sale of the property, his contact, and dealings with the person to whom defendant sold the property, and plaintiff's conversations with defendant, warranted the trial court in concluding that plaintiff was the efficient and procuring cause of the sale of defendant's property, and, therefore, its findings to the effect that within the limitation of time fixed by the contract plaintiff produced a purchaser on

2. See 4 Cal. Jur. 585.
3. See 4 Cal. Jur. 605; 4 R. C. L. 320.
4. See 4 Cal. Jur. 585.

terms acceptable to defendant and that the property was brought to the attention of said purchaser through the efforts and services of plaintiff were conclusive on appeal.

[6] ID.—CHANGE OF TERMS BY OWNER—PARTIAL EXCHANGE—RIGHT TO COMPENSATION.—A change made by the owner, when consummating the sale, in the price of the land or the terms of the sale from those specified in the broker's contract cannot of itself affect or impair in any way the right of the broker to his commissions; and where the owner, of his own accord, takes charge of the negotiations with the proposed purchaser and within the period of time fixed by the agency contract enters into a binding agreement with him for the disposal of the property, through an exchange of properties, upon terms acceptable to the owner, it is immaterial when, if at all, the transfers of the properties are consummated.

[7] ID.—MARKET VALUE OF EXCHANGED PROPERTY—ISSUES—FINDINGS —APPEAL.—In this action to recover a real estate broker's commission under a contract which provided that plaintiff should receive as his compensation all over a specified selling price, defendant having accepted the purchaser's property in part payment of the property covered by the agency agreement, it was necessary for the trial court to determine the market value of the purchaser's property at the time of the execution of the agreement of sale and exchange; and the finding of the trial court that defendant received for his property a value equivalent to a selling price of a specified sum, based upon all the facts and circumstances in evidence, was conclusive on appeal against both parties.

[8] ID. — VALUATION AT TIME OF EXCHANGE — SUBSEQUENT SELLING PRICE—EVIDENCE.—In such action, plaintiff's commission having been based upon the selling price of defendant's property, and defendant having taken other property as part payment of the purchase price, the material question for the trial court's determination was the market value of the latter property at the time defendant accepted it as part payment of the purchase price; and evidence of the subsequent selling price of said property, if admissible at all to prove a prior market value, would have amounted to nothing more than another circumstance relating to an issue upon which a conflict of evidence existed, and its exclusion was not harmful.

---

(1) 9 C. J., p. 612, n. 10 New.   (2) 9 C. J., p. 612, n. 9, 10 New. (3) 9 C. J., p. 611, n. 6, p. 620, n. 46.   (4) 4 C. J., p. 647, n. 15, p. 878, n. 82.   (5) 9 C. J., p. 656, n. 44.   (6) 9 C. J., p. 600, n. 54, p. 608, n. 90.   (7) 4 C. J., p. 883, n. 33.   (8) 4 C. J., p. 1012, n. 16.

6.  See 4 Cal. Jur. 606.

APPEALS from a judgment of the Superior Court of Alameda County. James G. Quinn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Clarence A. De Lancey for Appellant Glantz.

Carl F. Wood for Appellant Bail.

KNIGHT, J.—Plaintiff brought this action to recover the sum of $1,000 claimed to be due as real estate commissions and was given judgment for $500. Defendant has appealed upon the grounds that plaintiff was not entitled to a judgment for any amount and that the trial court erred in excluding a portion of defendant's evidence. Plaintiff, being dissatisfied with the amount of the judgment, has also appealed.

The written contract of agency between the parties, dated October 18, 1923, conferred upon plaintiff as agent, for a period of fifteen days following the execution of the contract, the exclusive right to sell defendant's property, situate on the Trestle Glen road, Oakland, for the sum of $11,500, upon the following terms, to wit: "All cash, or Fifty-five Hundred Dollars ($5500) cash; balance seven per cent . . . " Said contract further provided that "When the Agents have produced a purchaser on the terms above set forth, or other terms acceptable to me, or if I deal either before or after the expiration of this contract with any person, to whose attention said property was brought through the efforts or services of the Agents rendered hereunder during the life of this agreement, I will pay to said Agents at their office in Oakland, California, a commission of all over the selling price above specified." The trial court found "That plaintiff within said fifteen (15) day period produced a purchaser, to-wit: one D. M. Stewart, on terms acceptable to defendant, and said property was brought to the attention of D. M. Stewart through the efforts and services of plaintiff, rendered by plaintiff during said fifteen (15) day period; that said defendant did sell said property to said D. M. Stewart on the 31st day of October, 1923, on terms acceptable to defendant at the price

of Twelve Thousand ($12,000.00) Dollars''; and that therefore plaintiff was entitled to a commission of $500.

The undisputed evidence shows that on October 31, 1923, and within the fifteen-day period fixed by the agency contract, defendant entered into a written agreement with Stewart, whereby defendant agreed to convey to Stewart the property mentioned in the agency contract subject to an encumbrance of $6,000, and Stewart agreed to pay to defendant the sum of $1,000 in cash and to convey to him property situate in the Alden tract, Alameda County. Soon after the date of the expiration of the agency contract, the transaction between defendant and Stewart was consummated in accordance with the terms of their agreement. The defendant contends that the findings above quoted are not supported by the evidence in that there was no proof showing that plaintiff produced a purchaser, or that ''said property was brought to the attention'' of Stewart through plaintiff's efforts or services.

[1] Under a contract such as the one here considered the rule is that the broker has earned his commission when it is shown that he was the efficient cause of the sale; and his rights are the same whether his activities constitute the origin or the ending of a continuous series of negotiations leading to the successful consummation of the sale. [2] It is not enough that he contribute indirectly or incidentally to the sale by imparting information which tends to arouse interest, but it is sufficient if it be established that he set in motion a chain of events which without break in their continuity caused the buyer and seller to come to terms; that his efforts constituted the proximate cause of the meetings of the minds of the principals; and he will not be deprived of his commissions because the negotiations which are brought about and partially carried on by him are afterward completed by the parties themselves or through someone else. (*Sessions* v. *Pacific Improvement Co.,* 57 Cal. App. 1 [206 Pac. 653]; *Sargent* v. *Ullsperger,* 54 Cal. App. 384 [201 Pac. 934].) [3] It is necessary for the broker to prove, therefore, that he was the efficient or procuring cause of the sale; in other words, it must appear that his efforts had to do with the meeting of the minds of the seller and buyer (*Webster* v. *Parra,* 72 Cal. App. 639 [237 Pac. 804]), but if after he initiates the negotiations the seller

takes into his own hands the completion of the sale, the broker is so completely discharged from responsibility in the premises that the seller is estopped to contend against the broker's claim for commissions that the broker has not produced a purchaser who is ready, able and willing to make the purchase. (*Constant* v. *Wallace*, 62 Cal. App. 768 [217 Pac. 1081].) [4] "The expression 'procuring and inducing cause' as used in the books refers to the cause originating from a series of events that, without break in their continuity, result in the prime object of the employment of the agent." (*Roth* v. *Thompson*, 40 Cal. App. 208 [180 Pac. 656], quoting approvingly the rule stated in *Smith* v. *Priess*, 117 Minn. 392 [Ann. Cas. 1913D, 820, 136 N. W. 7].) In any event the question of whether or not the sale is primarily the result of the broker's efforts is one of fact, and the trial court's conclusions thereon will not be disturbed on appeal if there be substantial evidence to sustain them. (*Sessions* v. *Pacific Improvement Co., supra.*)

[5] The testimony given by plaintiff was to the effect that after the execution of the agency contract he advertised the property for sale, that he cleaned the premises, swept the house, mowed and watered the lawn and made the place as attractive as possible for selling purposes; that on the afternoon of October 27, 1923, while he was upon the property showing it to prospective buyers, Stewart came in to inspect the same; that he pointed out to him the advantages of the property, including the workmanship, decorating, and materials; the fireproof roof, tiled bathroom, tiled sink, the breakfast room and other attractive features. He also explained to him that the owner would install a furnace, an automatic water-heater, and fence the back yard. He furthermore supplied Stewart with information as to the amount of the selling price, the terms of payment and discussed with him the possibility of a trade. Plaintiff's testimony as to his interview with Stewart and the latter's inspection of the premises was corroborated generally by Stewart although the latter disagreed to some extent in regard to the details of the information imparted to him by plaintiff. That same evening plaintiff informed defendant of Stewart's visit to the property, and, although at that time plaintiff did not know Stewart's name, told defendant of the interest this prospective buyer had taken in the

property, but that he "did not come to anything definite before leaving." The next day Stewart, accompanied by his wife, returned to make further inspection of the property. When they arrived plaintiff was temporarily absent, but defendant was there and engaged in a conversation with Stewart concerning a sale or trade of the property. Just as Stewart and his wife were leaving plaintiff came upon the premises and defendant asked him if he knew "that fellow," to which plaintiff replied, "Yes, that is the man that was here yesterday, or the day before, which ever it was, that I was telling you about, that had the little place to trade." Continuing the conversation, plaintiff and defendant discussed the location and value of the property Stewart had offered in trade, also defendant's intention to inspect Stewart's property and the probability of the consummation of the sale on the terms proposed by Stewart. After defendant examined Stewart's property another conversation took place between plaintiff and defendant, concerning the value of Stewart's property in which defendant stated, in effect, in the presence of plaintiff's wife, that he was not having an easy task in making a trade with Stewart, whereupon plaintiff suggested that he would be glad to see what he could do with him. Defendant replied that he wanted plaintiff to "lay off of" Stewart, that he would "handle" him, and that the matter of plaintiff's commissions would be taken care of when the transaction was closed. On or about November 2d defendant informed plaintiff that the agreement for the disposal of the property had been signed. Plaintiff expressed his pleasure and added that he would put in his claim for commissions with the title company. Defendant told him, however, not to do so because he did not want Stewart to know that he, defendant, was paying a commission, defendant further stating that plaintiff was entitled to a commission which he, defendant, would take care of "on the outside." About November 12th, after the conveyances between defendant and Stewart had been recorded, another conversation occurred between plaintiff and defendant during which plaintiff demanded a settlement regarding his commissions. Defendant stated that although he had intended to pay plaintiff about three hundred dollars, he was unable to do so because of added expense in fixing up the Trestle Glen property before Stew-

art would accept it. Defendant then asked plaintiff how much he expected. Plaintiff stated that he expected the commission called for by the contract, and defendant replied that in that event they could not settle at all, that if plaintiff thought he could get that amount, to ''go ahead.'' Thereupon plaintiff commenced this action.

It is our opinion that under the authorities hereinabove cited the evidence narrated was amply sufficient to warrant the trial court in concluding that plaintiff was the efficient and procuring cause of the sale of defendant's property and, therefore, its findings to the effect that within the limitation of time fixed by the contract plaintiff produced a purchaser on terms acceptable to defendant and that the property was brought to the attention of said purchaser through the effort and services of plaintiff must be sustained.

[6] Defendant further contends that there was no evidence of a sale of the property on October 31, 1923, claiming in this respect that the transaction between defendant and Stewart constituted an exchange of properties and not a sale, and moreover that the exchange was not consummated until after the limitation of time fixed by the agency contract; consequently plaintiff was not entitled to commissions. We think neither proposition is maintainable. Regarding the first one, a change made by the owner, when consummating the sale, in the price of the land or the terms of the sale from those specified in the broker's contract cannot of itself affect or impair in any way the right of the broker to his commissions (*Roth* v. *Thompson, supra*); and as to the latter proposition the evidence shows that defendant, of his own accord, took charge of the negotiations with the proposed purchaser and within the period of time fixed by the agency contract entered into a binding agreement with him for the disposal of the same upon the terms acceptable to defendant. It was immaterial, therefore, so far as plaintiff's commissions were concerned, when, if at all, the transfers of the properties were consummated. (*Wood & Tatum Co.* v. *Basler,* 37 Cal. App. 381 [173 Pac. 1109]; *Sessions* v. *Pacific Improvement Co., supra; Twogood* v. *Monnette,* 191 Cal. 103 [215 Pac. 542]; *Johnson* v. *Krier,* 59 Cal. App. 330 [210 Pac. 966]; *Purcell* v. *Firth,* 175 Cal. 746 [177 Pac. 379].)

[7] Plaintiff and defendant both complain of the trial court's finding that the selling price of defendant's property was $12,000. It is evident, however, that defendant's acceptance of Stewart's real property in part payment of the purchase price for the property covered by the agency contract made it necessary for the trial court to determine the market value of Stewart's property at the time of the execution of the so-called exchange agreement of October 31, 1923, and much conflicting evidence was offered upon that subject. From all of the facts and circumstances thus presented the court concluded that defendant received for his property a value equivalent to a selling price of $12,000. In that state of the record the determination of the trial court is conclusive on appeal against both parties.

[8] The exclusion by the trial court of the evidence sought to be introduced by the defendant to show the net amount received by him from a subsequent sale of the Stewart property, if error, was not harmful. As above indicated, the material question for the trial court's determination was the market value of the Stewart property at the time defendant accepted it as part payment on the purchase price, and evidence of the subsequent selling price, if admissible at all to prove a prior market value, would have amounted to nothing more than another circumstance relating to an issue upon which a conflict of evidence already existed.

Finding no merit in either appeal, the judgment is affirmed. Neither side having prevailed on the appeal and the judgment being neither modified nor reversed, each side must bear his own costs of appeal.

Tyler, P. J., and Cashin, J., concurred.