[Civ. No. 13403. First Dist., Div. One. Nov. 10, 1947.]

WILLIAM G. RUTHERFORD, Respondent, v. FRED BERICK, Appellant.

David B. Fyfe for Appellant.

Wallace S. Myers for Respondent.

BRAY, J.—The first amended complaint alleged two causes of action: first, the breach of an oral contract by which plaintiff was employed to find a purchaser ready, able and willing to purchase a business known as "Brothers Tavern," and secondly, an alleged promise of both the seller and buyer defendants to pay plaintiff a broker's commission. The court granted a nonsuit on the second cause of action, and a judgment in favor of plaintiff and against the seller, defendant Berick (hereinafter referred to as defendant), for a commission on the sale of the tavern.

Two points are raised on this appeal: (1) insufficiency of the evidence to justify the finding that there was a contract by which defendant employed plaintiff to sell the tavern in question, and (2) that if there was such a contract, it was to sell at a fixed *net* price, which price was never obtained.

Having in mind the rule that where there is a conflict of evidence this court is bound by the findings of the trial court if there is any substantial evidence to support it, there can be no doubt that the testimony of the plaintiff himself as to the fact of there being an oral contract is alone sufficient to justify the finding of the court in that respect, even though as held in *Tomlinson* v. *Monroe,* 41 Cal. 94, the burden of proving the contract is on the plaintiff.

Defendant's only argument on this point is that there was no definite, express contract shown. Such a claim overlooks entirely the testimony of plaintiff as to the agreement, which testimony the trial court in its opinion characterized as "straightforward and clear and . . . convincing."

The second point is more serious and depends upon the exact terms of the oral contract. Defendant contends that the sale price suggested by the seller was a fixed *net* price, while plaintiff contends that such proposed sale price was merely an *asking* price. No contention is made that an agreement to pay a business opportunity broker's commission upon the sale of a business or other personal property need be in writing. Such an oral agreement is valid. (*Webster* v. *Parra,* 72 Cal.App. 639 [237 P. 804].)

█ The rules concerning the right to a broker's commission under the two different situations is well stated in *Palmtag* v. *Danielson*, 30 Cal.2d 517, 521 [183 P.2d 265]: "Ordinarily, the price at which a broker is authorized to sell property is considered merely an asking price to guide the broker in his negotiations with prospective purchasers. (See Rest. Agency, § 447, Comment b.) If the broker procures a purchaser willing to pay a lower price, the owner cannot deprive the broker of his commission by conducting the final negotiations himself and selling at a lower figure to the purchaser procured by the broker. (See 128 A.L.R. 430; 43 A.L.R. 1103.)

"An owner is entitled, however, to make a special contract with the broker whereby the latter is required to procure a purchaser willing to pay a particular price or meet specific conditions imposed by the owner. In such cases, if the owner sells the property to a purchaser procured by the broker, but on different terms from those stated in the contract, the broker is not entitled to a commission in the absence of bad faith. (*Backman* v. *Guadalupe R. Co.*, 78 Cal.App. 347, 353 [248 P. 296].) In brokers' net contracts, a fixed net amount must be paid to the owner and the broker's compensation is limited to the excess of the payment by the purchaser over the net amount specified. (*Haigler* v. *Donnelly*, 18 Cal.2d 674, 678 [117 P.2d 331].)"

Plaintiff was a licensed real estate and business opportunities broker. Defendant was the owner of an on-sale liquor business in Mill Valley known as "Brothers Tavern." About July 16, 1945, plaintiff appraised the value of defendant's home, at the latter's request. The conversation which gave rise to the contract between the parties occurred on or about July 20th at plaintiff's office. The defendant admits that a conversation took place at that time, but denies the salient features of it as given by plaintiff. According to plaintiff (and as the court accepted his version, so must we), he stated to defendant that he had a buyer for the tavern and wanted to know at what price it could be bought. Defendant told plaintiff that he already had an offer of $18,000. Plaintiff stated that the commission on the sale of business enterprises was 10 per cent and defendant stated that in order for him to get the price to which he felt he was entitled, he would have to establish a selling price of $20,000. A discussion was had concerning the sale of defendant's house as well as the tavern. Plaintiff stated that he could get $13,500 for the house, and

that the commission on the real estate would be 5 per cent—but that if the house and tavern were both sold plaintiff would charge a commission of only 5 per cent on the whole, rather than 10 per cent on the tavern and 5 per cent on the real estate, as customary. A price was then set of $33,000, $18,000 for the business, $13,500 for the house, and a $1,500 commission. The tavern price did not include liquor stock on hand, on the sale of which plaintiff was to receive no commission. Defendant authorized plaintiff to proceed on the basis discussed. Plaintiff procured a purchaser for the tavern, to whom he quoted a purchase price of $20,000, and introduced him to defendant. The purchaser was not willing to pay the price asked. Plaintiff took the purchaser to the bank to assist him in financing the purchase, if made. On two occasions, at least, defendant came to plaintiff's office to find out how things were going and to inquire if the purchaser had sufficient backing. After that, defendant and the purchaser left plaintiff out of the transactions. Finally, defendant agreed to accept, and the purchaser to pay, $15,000 for the tavern. Later, the purchaser, defendant and plaintiff met at the country club and defendant told plaintiff that the deal for the sale of the tavern was being closed and the necessary papers were being placed in escrow. He also stated that he had given the purchaser an oral option to buy defendant's house, but that the purchaser needed to sell his own home to get sufficient money for this purpose, and that when plaintiff sold the purchaser's home defendant would pay plaintiff's commissions. Plaintiff would not agree to this. At no time in all the negotiations which took place prior to the sale did defendant ever tell plaintiff he was not to receive a commission. It is apparent from the evidence that prior to the time the sale was actually consummated, defendant himself did not consider that plaintiff's right to a commission was based on his finding a purchaser who would not pay less than $18,000. The sale of the tavern was closed at $15,000 plus the value of the inventory. Defendant refused to pay plaintiff any commission. At the trial the court gave judgment in favor of plaintiff for a commission of 10 per cent on the sale price, or $1,500.

While it is true that at the time plaintiff was employed by the oral contract to sell the tavern, defendant stated that he wanted $18,000, and that the commission was to be added to that price, the whole conversation and the dealings between the parties support the finding of the court that the price stated was not the definite *net* price referred to in *Palm-*

*tag* v. *Danielson, supra,* 30 Cal.2d 517, 521, which unless procured, denies the broker his commission. It was merely the *asking* price to guide the broker in his negotiations with prospective purchasers and a price which the seller hoped to get. But at no time was there any definite statement made by defendant that he would not pay a commission if that price was not obtained, nor that in the event of his acceptance of a lower price, there would be no commission paid.

The facts of this case are somewhat similar to those in the Palmtag case, *supra.* There the contract was in writing and provided: "I have a price of $40,000.00 on the property and if you should arrange the sale, I will pay you 5% commission or a *net to me* of $38,000." (Emphasis added.) The broker produced a purchaser, who, however, was unwilling to pay $40,000, but would pay $35,000. After some discussions between the prospective buyer and seller, the seller attempted to terminate the broker's agency. Thereafter, the seller accepted the buyer's offer. The seller took the position that under the contract the property would have to sell for more than $38,000 before he would be obligated to pay any commission. The court said: "The contract, although ambiguous, does not reasonably lend itself to defendant's construction. Defendant stated: 'I have a price of $40,000.00 on the property and if you should arrange the sale, I will pay you 5% commission or a net to me of $38,000.00' If the phrase beginning 'or a net to me . . .' is excluded, the letter clearly states nothing more than an asking price for the guidance of the broker. The addition of 'or a net to me of $38,000.00' is illustrative of the amount that defendant would receive if the broker sold the property at $40,000. The $38,000 figure has no apparent independent significance, but is merely the amount remaining after the commission is subtracted from the proposed sale price. Interpreted in this manner, the phrase may be explained without doing violence to the remaining language in the contract.

"If the contract were construed to require $38,000 net to defendant, the provision for a 5 per cent commission would have little meaning. In such a case, a sale price of between $38,000 and $40,000 would result in less than a 5 per cent commission to the broker. The requirement of a $38,000 net minimum would also subordinate the proposed sale price of $40,000. The $40,000 would no longer be the proposed sale price, but would be transformed into a pivotal amount de-

termining whether the broker should receive a 5 per cent commission or less. . . .

"Moreover, the trial court's interpretation of the contract is supported by the evidence. (See *Estate of Rule*, 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].) There was evidence from which the trial judge could infer that it was not the meaning of the contract that a price of $38,000 net to the owner was a condition precedent to the payment of plaintiff's commission.''

█ So here, while the contract is possibly susceptible of the interpretation that the amount set was a *"net"* rather than an *asking* price, it is also susceptible of the interpretation which the trial court gave it, and as said in *Estate of Rule*, 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319] : ''The rule is that an 'appellate court will accept or adhere to the interpretation [of a contract] adopted by the trial court—and not substitute another of its own— . . . where parol evidence was introduced in aid of its interpretation, and such evidence . . . is such that conflicting inferences may be drawn therefrom.' (4 Cal.Jur. 10-Yr.Supp. (1943 rev.) 146-147, § 192; see also 2 Cal.Jur. 934-939, § 549.)'' Moreover, the interpretation given by the court is, under all the facts and circumstances of this case, the most reasonable one.

In *Haigler* v. *Donnelley*, 18 Cal.2d 674 [117 P.2d 331], cited by defendant, the owners of a furnished apartment house listed it with a licensed real estate broker for lease at. $250 per month, the furniture to be sold for $3,000, ''such amounts to be net to'' the owners (p. 676), nothing being said about a commission. The broker found a woman who agreed to lease at the specified rental but who would pay only $2,500 for the furniture, which amount the seller accepted. There was no evidence that at any time either the seller or the broker intended to deviate from the fact that the listing was a *net* one. The trial court held it to be such and refused to allow a commission. On appeal the Supreme Court held that the finding of the trial court was supported by substantial evidence. It is apparent from an examination of that case that the broker was not to get a percentage commission but was to retain all that the furniture might bring over and above the net price of $3,000—a far different situation from one where, as here, the seller promises to pay a percentage commission.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.