[Civ. No. 16211.   Second Dist., Div. One.   Apr. 20, 1948.]

HENRY S. REID et al., Appellants, v. R. M. JOHNSON, Respondent.

Harold M. Davidson and Aubry Miller for Appellants.

Snyder, Fletcher & Glaister and Louis T. Fletcher for Respondent.

BARTLETT, J. pro tem.—This is an appeal by the plaintiffs in an action brought to gain possession of two parcels of real estate and some personal property. The appellants were the holders of leasehold interests in two parcels of land in Los Angeles County. The first parcel, known as the Wheeler lease, contained some 513 acres, and the second parcel, known as the Standard and Baldwin leases, was contiguous to the Wheeler lease and embraced 1,100 acres. For purposes of convenience this second parcel will be hereafter referred to as the Standard lease.

On January 9, 1947, the parties entered into a written agreement which reads as follows:

"January 9, 1947—This agreement entered into between R. M. Johnson, San Gabriel, California, and Henry S. Reid, Palm Springs, California, for the assignment of the Wheeler lease for a total consideration of $2400.00 and the selling of truck, $250.00, one horse $100.00 and Squeeze $150.00, I hereby acknowledge receipt of $1,000.00 as part payment. Payment of the Wheeler lease to be assumed by R. M. Johnson and the refunding of any amount paid by Henry S. Reid on the 1947 lease.

"Balance of payment to be made Tuesday, January 14, 1947. If unable to pay at this time this Agreement is null and void and money advanced to Henry S. Reid shall be returned.

"Cattle comprising around 100 head and 6 head of mares to remain on the place rent free until they are in good enough condition to sell at a good price or until May 1, 1947.

R. M. Johnson<br>Henry S. Reid"

On the same day the parties also signed the following agreement:

"January 9, 1947

"This agreement entered into this day between R. M. Johnson, San Gabriel, California and Henry S. Reid, Palm Springs, California, to turn over as far as I am able, the Standard Oil lease and Baldwin lease. To use my good offices to obtain this lease for Mr. R. M. Johnson. He to assume the lease with all its provisions and to reimburse Henry S. Reid for the money paid for the lease for 1947.

R. M. Johnson<br>Henry S. Reid."

and also the following document:

"January 9, 1947

"R. M. Johnson agrees to pasture all horse and cattle for H. S. Reid that has not had pasture paid until they are all paid for or have been sold for pasture. R. M. Johnson to be paid for pasture from Tuesday, January 14, 1947.

R. M. Johnson<br>Henry S. Reid."

Thereafter, on January 14, 1947, two further documents were executed as follows:

"These Agreements are an extension of Agreements signed January 9, 1947, concerning the Standard and Wheeler leases, I am giving R. M. Johnson an extension of one week from today which would be January 21, 1947, for the completion of the deal, the only difference being that he is not to collect pasture rent on cattle or horses held or sold for bills due me.

R. M. Johnson<br>Henry S. Reid, M.D."

"This Agreement entered into this 14th day of January, 1947, between R. M. Johnson and Henry S. Reid, to-wit:

"That in the event that the Standard and Baldwin lease is not transferred to R. M. Johnson at the completion of our Agreement upon all the leases, it shall be kept in the name of Henry S. Reid and Henry S. Reid, Jr., as it is at present, with the full use of the lease to R. M. Johnson, until such

times as it is transferred.  This also applies to the Wheeler Lease.

Henry S. Reid, M.D."

The appellants state: "The sole and only question before the Court on this appeal relates to the interpretation of certain written documents under which the defendant took possession of a portion of the real property in controversy."

The property to which the appellants refer as having been taken possession of by the defendant was that known as the Standard lease, on which there was a house occupied by the respondents.  The court held that the instruments dated January 9, 1947—one for the purchase of the Wheeler lease, the second for the purchase of the Standard lease, and the third for the pasturing of cattle, were entered into by the parties to them as separate and divisible transactions.  Having so held, the court confirmed the possession of the Standard lease in the respondent and denied appellants' restitution of the property covered by that lease.

■■ It is the appellants' contention that the court's finding that the agreements pertaining to the Standard lease were entered into and executed by the plaintiff as a single, separate and individual transaction, is not supported by the evidence and that the various written agreements executed by the parties formed one complete contract.  Appellants cite section 1642 of the Civil Code, which reads as follows:

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

The only cases referred to by appellants are: *Cameron* v. *Burnham,* 146 Cal. 580 [80 P. 929], which merely recognizes the rule set forth in the quoted code section, and *People* v. *Ganahl Lumber Co.,* 10 Cal.2d 501 [75 P.2d 1067].  That case is cited because of appellants' contention that the trial court violated the rule of construction set forth therein as follows:

"Where two or more written instruments are executed contemporaneously with reference to each other for the purpose of obtaining a preconceived object, they must all be construed together and effect given, if possible, to the purpose intended to be accomplished."

That has always been the law and how it is to be applied when the court is concerned with two or more separately executed instruments is clearly set forth in *Merkeley* v. *Fisk,* 179

Cal. 748, at page 754 [178 P. 945]. In its decision the court first quotes the language of section 1642 of the Civil Code and then says:

"Obviously, the most certain criterion of the completeness of an individual writing will be found within the writing itself. It is therefore the general rule that two or more separately executed instruments may be considered and construed as one contract [1] only when upon their face they deal with the same subject matter, and [2] there be reference to one another so connected that they may be fairly said to be interdependent."

Let us examine these documents in the light of the rules laid down in section 1642 of the Civil Code and the cases referred to. The first contract of January 9, 1947, which we set forth in full herein, refers to the Standard lease alone and no reference whatever is made to the subject matter of the other two contracts. The second contract of January 9, 1947, deals with certain personal property and the Wheeler lease, with no reference whatever to the subject matter of one concerning the Standard lease. The third contract is a similar one, whereby respondent agrees to pasture certain cattle and refers in no way to the Standard lease. On their face then, whether we take them together or separately, it is difficult to see how they can be construed together as one contract, when each appears to be a separate, independent agreement.

To aid the court in arriving at the intent of the parties, the two agreements dated January 14, 1947, were introduced in evidence. Little help is given by these documents. One of them is concerned mainly with giving the respondent an extension of one week to make the payments and itself refers to the contracts for the Standard and Wheeler leases in the plural as "the agreements." The other agreement provides that the respondent shall have possession of the Standard lease even if legal title had to remain in Dr. Reid. It concludes with the statement "This also applies to the Wheeler lease," which would seem to indicate that the signer looked upon them as separate contracts. We see that there is nothing in these documents of January 14, 1947, which would make the documents of January 9, 1947, interdependent. They were so worded as to apply to each of them separately.

As appellants' attack is on the sufficiency of the evidence to justify the findings, it also becomes our duty to examine the parol evidence admitted as bearing on the question of the intention of the parties. In this there were conflicts, it is

true, but taking the testimony in the light most favorable to the court's findings, it discloses the following: The respondent never claimed a right to the possession of the Wheeler lease or to the personal property described in the complaint. He was in possession of the Standard lease at the time of the trial and had been there for some time, and was there on January 9, 1947. Prior to that date the parties had had several conversations relative to the desire of Dr. Reid to sell both leases, and on each occasion respondent had stated that he desired to take over the Standard lease where he was living. On January 9, 1947, they met at respondent's home on the Standard lease. At that time Dr. Reid asked the respondent if he still wanted the Standard lease, told him that he was going to give up both leases. Respondent said he would like to take the Standard lease and that he was sure he could and that he thought he might be able to take up the Wheeler lease as well but he would have to find out a few things about it. The agreements of January 9th were then drawn up by Dr. Reid and were in his handwriting. ■ It may be remarked here, parenthetically, that if uncertainties existed in these agreements it was reasonable for the trial court to infer that Dr. Reid, as the draftsman of the instruments in question, caused these uncertainties to exist and that the language of the contracts should be interpreted against him. (Civ. Code, § 1654; 6 Cal.Jur. 307; 4 Cal.Jur. 10-Yr.Supp. (1943 Rev.) § 185, p. 135, note 5.)

The agreement concerning the Standard lease provided that respondent was "to assume the lease with all its provisions and to reimburse Henry S. Reid for the money paid for the lease for 1947." The Standard lease ran from the period of October 15, 1946, to October 15, 1947, and cost Dr. Reid $1,000. On January 9, 1947, Mrs. Johnson, the wife of respondent, wrote out a check to Dr. Reid for $1,000, but he never cashed it. Respondent took possession of the Standard lease but did not take possession of the Wheeler lease. Dr. Reid testified that on that day in his presence a Mr. Rineholt wanted to pasture cattle on the Wheeler lease and offered to pay respondent in advance for the rental, but that respondent refused, saying something to the effect that that was to be left to a future date. Respondent says that he told Rineholt at that time that he had not yet taken over the Wheeler lease. On January 14, 1947, respondent told Dr. Reid he had been to see a Mr. McHenry at the Standard Oil Company and had asked him whether or not there would be any difficulty in

signing the lease and had been told not if he got a letter from Dr. Reid or his son; that upon receipt of such a letter he would transfer it. Dr. Reid said he would start the letter off. The first check for $1,000 not having been cashed, a second check in that amount was given to Dr. Reid. At that time respondent also told Dr. Reid that he did not yet know whether he could handle the Wheeler lease but would let him know definitely on January 21st. On January 22d, Dr. Reid's son brought this second check back to respondent and said: "The deal is off." The court ordered the respondent to deposit $1,000 with the clerk of the court for the benefit of appellants, which he did.

The appellant contended that the two leases could only be operated as one unit, but the evidence showed the contrary. The two leases had both been used for pasturing cattle but each is fenced separately with a gate between them. There are facilities on the Wheeler lease for loading and unloading cattle, and also water available. In fact, these leases always had been operated separately until the year 1944.

From all of this testimony the trial court could reasonably deduce that the instrument dated January 9, 1947, purporting to assign respondent the Standard lease was a separate and independent contract from the one dealing with the Wheeler lease, and that the parties so intended. ■ The rule governing appellate courts in the premises is set forth in *Estate of Rule*, 25 Cal.2d 1, at page 11 [152 P.2d 1003, 155 A.L.R. 1319]:

"The rule is that an appellate court will accept or adhere to the interpretation [of a contract] adopted by the trial court—and not substitute another of its own— . . . where parol evidence was introduced in aid of its interpretation, and such evidence . . . is such that conflicting inferences may be drawn therefrom. (4 Cal.Jur. 10-Yr.Supp. (1943 Rev.), 146-147, § 192; see also 2 Cal.Jur. 934-939, § 549.) Certainly inferences may be drawn from the contract and the surrounding circumstances here which would support the finding which we must presume was made by the trial court relative to the intention of the contracting parties." See, also, *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183], and *Rutherford* v. *Berick*, 82 Cal.App.2d 331 [186 P.2d 23].

Judgment is affirmed.

Doran, Acting P. J., and White, J., concurred.