[Civ. No. 17139.   First Dist., Div. One.   Apr. 26, 1957.]

ROLAND F. ZILLMER, Appellant, v. ELMER B. BICKERT et al., Respondents.

Carr, McClellan, Ingersoll & Thompson for Appellant.

O'Keefe & O'Keefe and James T. O'Keefe, Jr., for Respondents.

AGEE, J. pro tem.*—Plaintiff appeals from a judgment in favor of defendants (husband and wife) in an action to impose an involuntary trust upon one of two unimproved lots in Burlingame, referred to herein as Lots 14 and 15. Defendant wife did not actively participate in the transaction and defendant husband is the one hereinafter referred to as respondent.

Appellant had learned that Lots 14 and 15 were for sale. He contacted respondent and they orally agreed to buy said lots jointly for $15,000. Each agreed to put up his one-half of the money at the time of closing and then toss a coin to determine which lot each would get. In accordance with their agreement, respondent deposited $1,000 and signed a deposit receipt agreement. The first deposit receipt agreement had to be changed for reasons not pertinent here and the second was signed by respondent on January 31, 1955. Appellant did not put up any part of the deposit and his name did not appear of record in the transaction.

On February 6, 1955, appellant telephoned to respondent and told him that he and several associates were attempting to buy other lots in the same block and offered to withdraw from the purchase of Lots 14 and 15 if he, appellant, was able to acquire Lots 10 and 11 for himself. Appellant admits the making of such offer but denies that it was accepted by respondent. Respondent contends that he did accept the offer in the same conversation and that the condition subsequent, i.e., the acquisition of Lots 10 and 11 by appellant, occurred shortly thereafter. The record does not show the closing date of appellant's purchase of Lots 10 and 11 but appellant testified that he made the deposit thereon on February 11, 1955, and on February 22, 1955, appellant, in referring to such purchase, stated that "lot number 11 *cost* him more money" than he had anticipated. (Emphasis added.)

The next time after February 6, 1955, that the parties talked to each other was on February 22, 1955. In this conversation, appellant asserted a right to either Lot 14 or Lot 15. Respondent stated that both lots were his. Appellant replied, obviously referring to his offer of February 6, 1955, " 'You did not confirm it.' "

Appellant commenced this action on March 3, 1955. Nevertheless, on March 17, 1955, respondent put up the balance of the purchase price and took title in himself and his wife by deed recorded March 25, 1955.

*Assigned by Chairman of Judicial Council.

It is thus apparent that the determinative issue in this case is whether respondent accepted appellant's offer of February 6, 1955. The trial court held for respondent on this issue and made the following finding: "That any agreement between plaintiff and defendants for the joint purchase of said real property, or any part or parcel thereof, was abrogated and annulled by a mutual understanding and agreement fully entered into and understood by plaintiff and defendants prior to and at the time defendants so purchased the said real property." Since both respondent and appellant testified that their agreement made in January, 1955, remained in effect until February 6, 1955, it is obvious that the annulment found by the trial court did not occur until then and that "the time defendants so purchased" was meant to be March 17, 1955, when respondent paid the balance of the purchase price and obtained the deed.

Respondent's testimony fully supports the finding that the agreement between the parties was annulled by mutual agreement. Both parties agree that in the conversation of February 6, 1955, appellant made an offer to withdraw from the agreement and to disclaim any interest in Lots 14 and 15 in return for a release of his obligation to put up one-half of the purchase money therefor, such offer being subject to the condition subsequent heretofore discussed. In support of his contention that he accepted this offer in the same conversation in which it was made, respondent testified as follows: "He [appellant] called me up on February 6th and he asked me if I would be willing to take over the two lots that I had a deposit on; that he had two or three other people or parties that were going in with him to make a deposit on Lot 10, 11, 12 and 13, and as the conversation went on, I said *at first*, 'Well, I will ask ——' meaning my wife, and as the conversation *went on*, he says, 'Well, if I get these corner lots,' he says, 'I can put up one for sale and put it up high enough and you can do the same thing.' *I said, 'O.K.'* but he says, 'Now, remember, if I don't get the lot, if I don't get the lot, if I don't get the corner Lot 10 and 11, I want one of those lots.' I said, *'Absolutely, O.K.'* " (Emphasis added.)

The question is therefore narrowed to whether respondent's reply to appellant's offer in the conversation just quoted can reasonably be interpreted as an acceptance thereof. We hold that it can be and that such interpretation is therefore binding upon this court. As was said in *Rutherford* v. *Berick*, 82 Cal.App.2d 331, at 336 [186 P.2d 23]: "So here, while the

[oral] contract is possibly susceptible of the interpretation that the amount set was a 'net' rather than an asking price, it is also susceptible of the interpretation which the trial court gave it, . . ."

Appellant complains that respondent's answer did not specifically plead the defense of annulment or termination of the agreement. This objection is raised for the first time on appeal. The case was tried upon the theory that the defense of respondent and his only defense was that the agreement which he himself admitted and testified to was annulled by mutual agreement of the parties. Appellant himself states in his closing brief herein that after he, appellant, had made out a prima facie case, respondent's position was as follows: "Thereupon, it was Respondent's *burden to show* by way of defense that . . . [t]he *agreement* had been otherwise discharged or *terminated* (of which there was no evidence) ; . . ." (Emphasis added.) Thus, appellant himself acknowledges the right of respondent to prove a termination. He only argues that there was no evidence to support it.

Moreover, the respondent's cross-complaint alleged that it was "a further and separate defense to said action," that respondent and his wife were the owners of the lots in question and that appellant's claim of an interest therein was "without right whatever" and that appellant had "no estate, right, title or interest whatever" in said lots. Respondent's prayer asked for a decree declaring that appellant had "no estate or interest whatever in or to" said lots. We conclude that the pleadings sufficiently raised the issue as to the continued existence of the agreement between the parties and that the question of termination or annulment thereof was necessarily included therein.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.