135 Cal.App.2d 769 (1955)
In re WINTON BYINGTON OSTER, on Petition for Citizenship. WINTON BYINGTON OSTER, Appellant,
v.
UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
Civ. No. 5143. 
California Court of Appeals. Fourth Dist. 
Sept. 29, 1955.
 Sweet, Ault & Warner for Appellant.
 Laughlin E. Waters, United States Attorney, Max F. Deutz, Assistant United States Attorney, Chief of Civil Division, and Arline Martin, Assistant United States Attorney, for Respondent.
 SHELL, J. pro tem. [fn. *]
 Appellant, a citizen of Switzerland, was denied citizenship by the Superior Court of San Diego County by order of February 18, 1955. He was lawfully admitted to the United States at New York on August 30, 1933, and married a United States citizen on June 13, 1938. In 1940, he registered under the Selective Training and Service Act of 1940.
 In 1943, appellant received a circular from the Swiss legation in Washington, D. C. in which it was stated that the Swiss authorities had received assurances from the American Department of State that the American government "has no intention to deny to Swiss nationals who have not declared their intent to become an American citizen any right or privilege conferred on them by the treaties existing between the two countries and, therefore, will give appropriate consideration to any individual request by a non- declarant Swiss citizen for exemption from military service. It, therefore, appears that such exemption can be obtained without the necessity of forfeiting the right thereafter to become an American citizen, if the request is based on Art. II of the Treaty of Friendship, Commerce and Extradition between the United States and Switzerland of November 25, 1850 ..."
 On March 8th, 1944, appellant's draft board in Los Angeles forwarded to him two copies of DSS Form 301. These forms contained the following declaration:
 "I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States." *771
 These forms were accompanied by a letter from the board informing appellant that his failure to file DSS Forms 301 had placed him in a doubtful position, as far as his request to be relieved of service was concerned; that he could not be reclassified from Class 1-A unless the forms were filed; that he was then eligible for induction and might expect an order to report for preinduction physical examination in the near future.
 On March 10, 1944, appellant acknowledged receipt of the said forms and letter, and stated in his letter to his draft board:
 "My consulate in Washington has advised that I sign the new form 301, which does not have the clause:"
 " 'I understand that in making of this application to be relieved from such liability will debar me from becoming a citizen of U.S. Kindly send me two forms of new form 301.' "
 On April 24, 1944, the draft board wrote to appellant, and he received in due course, a letter informing him that revised form 301 was available to registrants only through their consulates; that while the language cited above does not appear in the revised form,
 "... it should not be assumed that the filing of this form might not have an adverse effect upon any future request for naturalization by the registrant concerned ... National Headquarters has taken the viewpoint that any such treaties as mentioned above are inconsistent with and abrogated by the Selective Service Law, and that the filing of a revised Form 301 will leave any decision regarding future citizenship to a court, before whom application for same might be made."
 "Inasmuch as you have not filed either type of Form 301, you are still regarded as available for induction."
 On April 26, 1944, appellant forwarded a copy of the foregoing letter to the Swiss consul at Los Angeles, California, and shortly after May 2, 1944, received from the Legation of Switzerland at Washington, D. C. a letter dated May 2, 1944, advising him that the legation, accordance with the provisions of article II of the Treaty between the United States and Switzerland, hereinbefore referred to, had requested the Department of State, on September 28, 1942, to exempt appellant from the liability for personal military service with the United States armed forces, enclosing with said letter two copies of DSS Form 301, revised, and suggesting that appellant execute and file this form with his draft *772 board. This letter also stated the following conclusion of the writer:
 "Please note that, through filing of DSS Form 301, revised, you will not waive your right to apply for American citizenship papers. The final decision regarding your naturalization will remain solely with the competent Naturalization Courts."
 On May 5th, 1944, appellant executed Form DSS 301, revised, and thereafter filed it with his draft board and thereupon received classification in Class IV-C. In this document appellant represented himself to be a citizen or subject of Switzerland, a registrant of Local Board 199, Los Angeles, California; that he had not declared his intention to become a citizen of the United States and: "I hereby apply for relief from liability for training and service in the land or naval forces of the United States."
 On this application, below the signature of appellant, and the jurat of the notary public, appears the following printed memorandum:
 "Section 3(a) of the Selective Training and Service Act of 1940, as amended, provides in part "That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States.' ""
 Appellant filed his petition for naturalization in the Superior Court of San Diego County, State of California on May 8, 1953, and the same was denied by the court on February 18, 1955.
 Appellant apparently believes that the determination of his appeal depends upon the question as to whether or not his execution of the application for exemption on DSS Form 301, revised, constituted a waiver of his right to apply for citizenship. We believe that the problem cannot be so simply stated.
 Appellant relies upon Tutun v. United States, 12 F.2d 763, and Moser v. United States, 341 U.S. 41 [71 S.Ct. 553, 95 L.Ed. 729].
 In Tutun v. United States, supra, the petition for admission to citizenship was denied by the District Court of the United States for the District of Massachusetts, solely upon the ground that petitioner's claim of exemption from military *773 service as an alien conclusively proved that he was not "attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same." The petitioner at the hearing before the court had offered the evidence of two witnesses as to his attachment to the Constitution, but the court refused to hear this evidence, basing its refusal upon the erroneous conclusion that petitioner's claim of exemption was conclusive proof that he was not attached to the principles of the Constitution. In its opinion in the Tutun case the Circuit Court of Appeals drew, from the failure of Congress to legislate a bar to citizenship of nondeclarant aliens similar to that which it did declare against declarants, the inference that Congress did not intend the bar to apply to nondeclarants. The Circuit Court of Appeals in the Tutun case reversed the district court, stating:
 "While a wide discretion is lodged in the judge who hears a petition for naturalization, this discretion cannot be exercised arbitrarily or in a manner which adds to the requirements contained in the act, which must be liberally construed in favor of the petitioner. (Citing cases.)"
 "We think the denial of citizenship to the petitioner on the sole ground that he had claimed exemption from military service was unwarranted by law."
 In the instant case the trial court did not refuse to hear evidence presented by petitioner. Hence it cannot be said that by reason of any such refusal the court exercised its discretion in an arbitrary manner.
 It is to be noted that the Tutun case was decided May 29, 1926, and that Moser v. United States, 341 U.S. 41 [71 S.Ct. 553, 95 L.Ed. 729], was decided April 9, 1951. Section 315a of the Immigration and Nationality Act of 1952 (effective June 27, 1952, 8 U.S.C.A. 1426) provides in part as follows:
 "Sec. 1426. (a) Notwithstanding the provisions of Sec. 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States."
 The provision of the quoted statute is not in contravention of nor inconsistent with any part of article II of the Convention of Friendship, Commerce and Extradition between the United States and Switzerland (Malloy, Treaties, vol. 2, p. *774 1764). The treaty, in no respect, provides any guaranty of any right of Swiss nationals to become citizens of the United States by naturalization or by any other process.
 In Moser v. United States, 341 U.S. 41 [71 S.Ct. 553, 95 L.Ed. 729], the Supreme Court, referring to section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stats. 885, 55 Stats. 845, 50 U.S.C.A. 303(a), 50 U.S.C.A. Appendix, 303(a), said:
 "That the statute unquestionably imposed a condition on exemption not found in the Treaty does not mean they are inconsistent. Not doubting that a treaty may be modified by a subsequent act of Congress, it is not necessary to invoke such authority here, for we find in this congressionally imposed limitation on citizenship nothing inconsistent with the purposes and subject matter of the Treaty. The Treaty makes no provision respecting citizenship. On the contrary, it expressly provides that the privileges guaranteed by each country to resident citizens of the other 'shall not extend to the exercise of political rights.' The qualifications for and limitations on the acquisition of United States citizenship are a political matter which the Treaty did not presume to cover."
 In the Moser case the Circuit Court of Appeals had accepted the finding of the district court, as did the Supreme Court, that the petitioner signed the application for exemption believing that he was not thereby precluded from citizenship, and that had he known claiming exemption would debar him from citizenship, he would not have claimed it, but would have elected to serve in the armed forces. This factual situation distinguishes the Moser case from the present case. The implied finding of the trial court in the instant case was exactly contrary to that made in the Moser case.
 In the instant case no formal findings were made by the trial court. None were necessary. The trial court, however, in its oral opinion, stated:
 "Dr. Oster himself has testified to the effect that he went to a recruiting office in Denver, Colorado, in 1942, and he was informed there that since he was not a citizen he could not receive a commission; that it might be better for him to wait until he was drafted, but that the draft would call him up as a private. He had to make a choice then whether to claim this exemption from military service by virtue of his Swiss allegiance or nationality, or to take the chance of being drafted as a private. World War Two then being in progress, he made the choice. The choice was to claim exemption." *775
 Referring to the documentary evidence received, the trial court further stated:
 "But I think he was on particular notice that he had a difficult decision to make, and he made it. He knew then the chances of being an American citizen would be prejudiced by his application for this exemption from military service. He said on the stand, 'I had the choice of practicing medicine in San Diego or being taken into the military service as a private.' I think in these circumstances that this petitioner is not eligible for citizenship, and his petition is denied."
 [1] It is proper that an appellate court give special consideration to the reasons given by a trial judge in his oral opinion, where such reasons furnish the basis of the court's action. (Coakley v. Ajuria, 209 Cal. 745, 749 [290 P. 33].)
 [2] We find ample evidence in the record to support the implied findings of the trial judge and the final conclusion reached by him in the order denying appellant's application for naturalization. Appellant testified that during World War II he practiced medicine and surgery in Ocean Beach and San Diego; that at one time he was given a classification by the draft board as "an essential"; that he felt he was doing as much good as if he had been a private in the army; that he "chose this as a choice"; that if "they" had let him go into the service as a doctor, he would have gone into the military service; that because of the treaty he felt that it was not his duty to serve in the armed forces of the United States; that when he filed his application for exemption "Citizenship didn't mean much to me in those days. ... I had no reason to think very much of citizenship. It didn't mean much to me."
 [3] On appeal, the appellate court will view the evidence in the light most favorable to the findings. It will not weigh the evidence, and will indulge all reasonable inferences in support of the judgment of the trial court. (Estate of Bristol, 23 Cal.2d 221, 223 [143 P.2d 689]; Beeler v. American Trust Co., 24 Cal.2d 1, 7 [147 P.2d 583]; Viner v. Untrecht, 26 Cal.2d 261, 271 [158 P.2d 3].)
 The order denying appellant's petition for naturalization is adequately supported by substantial evidence. Order affirmed.
 Griffin, Acting P. J., and Mussell, J., concurred.
NOTES
[fn. *] *. Assigned by Chairman of Judicial Council.