[Civ. No. 17609. First Dist., Div. Two. Nov. 19, 1957.]

ROBERT ROSE, Respondent, v. JAMES T. HUNTER, SR., et al., Appellants.

Noland, Hamerly & Etienne for Appellants.

Dennis L. Woodman for Respondent.

DOOLING, J.—Defendants appeal from a judgment awarding plaintiff, a licensed real estate broker, a commission for procuring the sale of a motel near Palo Alto to one Schmidt. In February 1955 appellant Hunter, Jr. authorized respondent to sell this property for $197,500. On April 28, 1955, one Spratt, a salesman for respondent, showed the motel to Schmidt. On April 29, 1955, Spratt notified Hunter, Jr., by letter that information concerning the motel had been furnished to Schmidt. The letter stated: "This letter is being sent to you to put you on notice that this office was the procuring agent and that all brokerage rights are being claimed and in the event of a sale to Mr. Schmidt a 5% brokerage commission of the sale price will be due Robert Rose Realty Company." No reply was made to this letter. On May 5, 1955 Hunter, Jr., sent a letter to respondent advising him that the motel was "off the market." On May 31, 1955, another letter was sent to respondent informing him that he could again show the motel to qualified buyers. A postscript to this letter stated: "No trades considered." In the meantime Schmidt had continued to negotiate with appellants and in July, 1955 the motel was sold to Schmidt for $165,000 which included the transfer of real property belonging to Schmidt at an agreed value of $30,000.

The complaint joined Schmidt and his brother, named as First Doe, as defendants as well as the appellants. It was in two counts, the first charging that after plaintiff had brought the motel to Schmidt's attention and notified appellants of that fact, the parties had negotiated between themselves to the exclusion of plaintiff and had effected the sale

of the property. The second count charged a conspiracy among defendants to eliminate plaintiff from the negotiations and avoid paying him the commission earned by him. The trial court found the allegations of the first count to be true, and on the second count found a conspiracy among appellants as alleged but found that the Schmidts were not parties to such conspiracy. Judgment was against appellants and in favor of the Schmidts.

Appellants' primary contentions are that there is no evidence to support a finding that respondent was the procuring cause of the sale and that in any event no such finding was made by the trial court and hence the findings fail to support the judgment. "In the absence of a special contract, a broker must be the procuring or inducing cause of a sale or transaction in order to be entitled to commissions thereon." (9 Cal.Jur.2d, Brokers, § 80, p. 242.)

 The defendants and their witnesses testified that Schmidt already knew of appellants' motel and was negotiating for its purchase when he was first shown the property by respondent's salesman. In this respect Schmidt and Hunter, Sr. both testified that when Spratt went to show the motel to Schmidt in the presence of Hunter, Sr., who was on the premises, Spratt was told that Schmidt had already met Hunter, Sr., and had negotiated for the property. Spratt denied this conversation and testified that when he introduced Schmidt to Hunter, Sr., they gave no evidence of having previously met. There was evidence also of one Holderbein that he had called Schmidt's attention to this motel in September 1954. The trial judge filed a memorandum in which he reviewed the evidence. He said in part: "Plaintiff did not participate in the closing of this deal and had no notice of it at the time; he claims, however, to have been the procuring cause of the sale. To determine the matter, it is necessary to go somewhat into the background as developed by the defendants." After a résumé of the evidence the memorandum states the court's conclusions: "If the plaintiff's salesman did in fact write Plaintiff's Exhibit 1 [the letter of April 29, 1955, from Spratt to Hunter, Jr.], and the Court finds that he did, then the conduct of the defendants is inexplicable. Certainly, no owner is about to ignore the fact that a real estate broker claims commissions on a sale to a certain prospect with whom negotiations are pending, when in fact such negotiations had been initiated before the authorization to the broker. Neither is an owner, who is trained

in real estate transactions, likely incorrectly to notify the broker that the property concerned is off the market. . . .

"Everything considered, it appears that the plaintiff has made his case against defendants Hunter, Sr., Anderson, Hunter, Jr., and Merrill. . . ."

█ " 'Procuring cause' has been defined as the cause originating a series of events that, without break in their continuity, result in the accomplishment of the prime object of the employment." (9 Cal.Jur.2d, Brokers, § 80, pp. 242-243.) "Where several agencies have been active in bringing about a sale . . . the crucial question is, which was the predominating efficient cause?" (*Sessions* v. *Pacific Imp. Co.*, 57 Cal. App. 1, 17 [206 P. 653].) █ "The word 'procure' does not necessarily imply the formal consummation of an agreement. . . . In its broadest sense, the word means to prevail upon, induce or persuade a person to do something. . . . The originating cause, which ultimately led to the conclusion of the transaction, is held to be the procuring cause. [Citation.] And where the evidence is conflicting, the conclusion as to the procuring cause is one for the trial court and will not be disturbed on appeal." (*Willson* v. *Turner Resilient Floors*, 89 Cal.App.2d 589, 595 [201 P.2d 406] ; *Brea* v. *McGlashan*, 3 Cal.App.2d 454, 465-466 [39 P.2d 877].) █ If the broker is, in fact, the procuring cause "it is unnecessary for the broker to prove that he was the first one to bring to the attention of the purchaser the fact that the property in question was for sale. . . ." (*Webster* v. *Parra*, 72 Cal.App. 639, 648 [237 P. 804].)

█ Weighing the whole course of conduct of the parties and the reasonable inferences to be drawn therefrom the evidence is sufficient to support the determination of the trial court that respondent was the procuring cause of the sale.

The quoted language from the trial court's memorandum shows that he considered and decided in respondent's favor the question of procuring cause. The findings of fact, however, were framed by reference to the pleadings which contained no express allegation of procuring cause. █ The opinion of the trial judge is properly a part of the record on appeal. (Rules on Appeal, rules 5(a) and 5(b).) This opinion cannot be used to contradict the findings but "may be considered for the purpose of discovering the process by which the trial judge arrived at his conclusions, or when the opinion furnishes the basis of the court's action in its decision of the case." (*Inskeep* v. *Bear Creek Co.*, 54 Cal.App.2d 723,

729 [129 P.2d 401]; *In re Oster,* 135 Cal.App.2d 769, 775 [287 P.2d 859]; *Kallmeyer* v. *Poore,* 52 Cal.App.2d 142, 152 [125 P.2d 924].) It is clear from this opinion that the trial judge fully realized that the question of procuring cause was the crucial question in the case and decided the case on the basis of his determination that respondent was the procuring cause of the sale. █ It would serve no purpose to reverse the case on the purely technical ground. that an essential finding is lacking when we know from the trial judge's opinion that upon reversal he would make the necessary finding to support his judgment and we have the power to make that finding. (Code Civ. Proc., § 956a.)

The exact terms of the listing with respondent were never proved. At the opening of the trial counsel for respondent asked counsel for appellants if it would be stipulated "that Robert Rose had sufficient authority to satisfy the statute of fraud [sic]" and counsel for appellants replied: "Yes. I would stipulate to that." It was testified that the listing was at a price of $197,500 and nothing further as to its terms was established.

█ "Ordinarily, the price at which a broker is authorized to sell property is considered merely an asking price to guide the broker in his negotiations with prospective purchasers. (See Rest., Agency, § 447, Comment b.) If the broker procures a purchaser willing to pay a lower price, the owner cannot deprive the broker of his commission by conducting the final negotiations himself and selling at a lower figure to the purchaser procured by the broker. (See 128 A.L.R. 430; 43 A.L.R. 1103.)" (*Palmtag* v. *Danielson,* 30 Cal.2d 517, 521 [183 P.2d 265]; *Filante* v. *Kikendall,* 134 Cal.App.2d 695 [286 P.2d 448]; *Baker* v. *Curtis,* 105 Cal.App.2d 663 [234 P.2d 153]; *Rutherford* v. *Berick,* 82 Cal.App.2d 331 [186 P.2d 23].)

Appellants, however, argue that having terminated the agency by their letter of May 5, 1955, and by their letter of May 31, 1955, having given authority to sell but not to negotiate an exchange of properties (by the postscript language: "No trades considered"), the respondent failed to find a buyer in accordance with his authorization because an exchange of property at an agreed price of $30,000 was a part of the final transaction. █ The principal cannot escape his liability to the agent where he revokes the agent's authority, after a prospective purchaser for the property has been procured, in bad faith and for the purpose of avoiding the

payment of the agreed commission. (*Heffernan* v. *Merrill Estate Co.*, 77 Cal.App.2d 106, 117 [174 P.2d 710]; *Walter* v. *Libby*, 72 Cal.App.2d 138, 144 [164 P.2d 21].) It is equally clear that he could not put a new limitation on his broker's authority for the same purpose. Here the trial court expressly found that appellants ". . . did conspire . . . to eliminate plaintiff from said negotiations and transaction and thereby . avoid paying plaintiff the brokerage commission earned by him . . ." This the law will not permit them to do.

■ Where the owner as here voluntarily engages in an exchange of properties, instead of a sale, with the prospect procured by his broker the broker's right to a commission is not affected. (*Bail* v. *Glantz*, 78 Cal.App. 49, 56 [248 P. 258].)

■ There is no inconsistency between the finding that Schmidt carried out the negotiations with appellants to the exclusion of respondent and the finding that the Schmidts were not parties to the conspiracy to deprive respondent of his commission. The fact that the negotiations were carried to a conclusion without respondent's participation does not compel a finding that the Schmidts were consciously parties to a scheme to deprive respondent of his commission.

The admission of a copy of the letter of April 29, 1955, from Spratt to Hunter, Jr., was not error. When the copy was produced counsel for respondent asked counsel for appellants if they had a copy of the letter. Counsel for appellants answered: "We don't have a copy of the letter . . ."

■ Where the original is lost a copy can be introduced on proof of mailing the original. (*Hughes* v. *Pacific Wharf & Storage Co.*, 188 Cal. 210 [205 P. 105].) Counsel's statement that they did not have the letter shows that a more formal demand to produce it would have been futile and it was therefore unnecessary. ■ The letter coupled with the failure of appellant Hunter, Jr., to reply thereto could be, as it was, construed by the trial court as an admission against interest. (*Simpson* v. *Bergmann*, 125 Cal.App. 1, 8 [13 P.2d 531].)

The findings of fact are ordered amended by adding thereto the following: "The court further finds that plaintiff was the procuring cause of the sale of said motel by defendants James T. Hunter, Sr., Oliver I. Anderson, James T. Hunter., Jr., and Boyd E. Merrill to said Walter Schmidt." The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.