[Civ. No. 23607. Second Dist., Div. One. Dec. 28, 1959.]

CONRAD NONGARD, Plaintiff and Respondent, v. ROY J. SCOTT, Cross-Complainant and Respondent; INTER-NATIONAL GLASS CORPORATION (a Corporation), Appellant.

Irving A. Bernstein for Appellant.

Petermann & Watterson and Richard C. Hart for Respondents.

SCOTT (Robert H.), J. pro tem.*—International Glass Corporation is a defendant, in a complaint brought by Nongard against the corporation and Scott, and is a cross-defendant in an amended cross-complaint brought by Scott against the corporation and Nongard. From an adverse judgment in each case the corporation appeals.

Nongard sued Scott and the corporation on a written contract dated and delivered on August 6, 1952, which reads as follows:

"August 6, 1952

"Mr. Cónrad Nongard
650 South Grand Ave.
Los Angeles, Calif.

"Dear Mr. Nongard:

"Based on our various conversations, I am confirming our mutual understanding. Through your efforts, with all the possible cooperation on my part, you will secure:

a) Underwriting agreement, mutually satisfactory, executed by one or by a number of underwriters, acceptable to me and selected by you, covering a public issue of $1.00 par value International Glass Corp. shares in the total amount of $300,000.

b) An agreement satisfactory to me with a number of stock brokers, selected by you, to sell said stock to the public at a price sanctioned by the Commissioner of Corporations.

c) To use all your best efforts to reduce the top underwriting, brokerage, etc., commissions and fees from 20% to a lesser percentage.

"In consideration of your accomplishment, I promise to pay you partly in cash and partly in International Glass Corp. stock at a ratio to be determined by mutual under-

*Assigned by Chairman of Judicial Council.

standing, the sum of $8500.00 if and when the proceeds of the above mentioned public issue will be turned over in cash and in total to International Glass Corporation, Los Angeles, California.

Very truly yours,

ROY J. SCOTT

Roy J. Scott"

RJS/s

Nongard alleged that he had rendered the services called for and that Scott had paid him $500 on account. He sought judgment for the sum of $8,000 against both defendants.

In his answer Scott alleged that the $500 was a loan not a payment to Nongard and denied any indebtedness to the latter. In his cross-complaint he asserted that the corporation was in fact the sole obligee on the contract and sought appropriate judicial declaration to that effect and reformation of the instrument.

The trial court found that Scott was president of the corporation and signed as the latter's agent and the contract was reformed to show the signature to be that of the corporation by Scott as its president. It determined that Nongard was entitled to judgment against the corporation alone in the sum of $8,500, and that Scott was entitled to judgment against Nongard for the $500 which was found to have been a loan to him.

Although Nongard filed a cross-appeal from the judgment in favor of Scott it appears that this was merely a precautionary move by Nongard who asserts that the cross-appeal related solely to the adverse judgment on the cross-complaint, that the present judgment against the corporation alone is satisfactory to him and if that is affirmed the cross-appeal will not be pressed.

In May or June 1952 Nongard talked with Scott as president of defendant corporation relative to the latter corporation acquiring or merging with Soft-Flex Glass Fabrics Corporation which was in the related business of manufacturing glass fibers and was in financial difficulty. After negotiations and work by various parties Soft-Flex Corporation was acquired by defendant corporation.

The judgment in this action based on the above-quoted agreement, promising payment for services rendered by Nongard to defendant corporation is resisted on appeal with the claims that the contract is illegal and void, that Nongard did not perform as he was required to do and that the agreement

was that of Scott and not of the corporation and that the contract should not have been reformed.

■ The asserted illegality is based upon the impression that the contract required Nongard to act as a securities agent or broker. The trial court found that he was licensed as an agent of a licensed security broker who was not connected with this transaction but that he was not licensed as an agent or as a broker of Scott or defendant corporation (Corp. Code, §§ 25005, 25006) and the latter suggests that, therefore, under provisions of the Corporate Securities Law (Corp. Code, § 25000 et seq.) and especially under section 25700 he could not recover payment for the services rendered.

The trial court found that Nongard rendered the services called for by the contract and had earned his money. It concluded that in doing so he did no acts requiring a license under Corporate Securities Law.

It found that by the terms of the instrument Nongard was to procure a ''best efforts'' underwriting agreement with a duly licensed brokerage firm by which the latter would agree to use its best efforts for a given time to sell the stock issue offered to the public, that Nongard found such a broker who agreed to accept less than the usual fee and a meeting was arranged between the broker and an officer of defendant corporation culminating in an agreement between the latter two parties. The number of shares to be sold was later reduced from 300,000 to 275,000 by mutual agreement of these parties without Nongard's knowledge or consent. When the broker thus obtained by Nongard had sold 73,000 shares defendant corporation became dissatisfied and substituted another broker to complete the sale. The evidence was sufficient to support the findings of the trial court. Its determination that there was no violation of the Corporate Securities Law was correct. (*Freeman* v. *Jergins,* 125 Cal.App.2d 536 [271 P.2d 210].)

It is urged that even though the instrument itself were found to be legal the transaction is vulnerable because the true consideration for the compensation called for by the contract was Nongard's services in connection with acquisition of Soft-Flex Corporation which services were those of a securities broker. In connection with evidence adduced at the trial, especially that offered in support of Scott's prayer for reformation of the instrument it developed that Nongard had in truth been active and useful to Soft-Flex Corporation and its creditors, resulting in benefit to defendant corporation. The latter's position in urging this point on appeal is that even though Nongard might be entitled under the contract to

recover for services which were legal and valuable he should be denied payment because he rendered other services, even though he said he would ask no payment and the law would not permit any payment for them, the theory being that appreciation for the services for which Nongard sought no payment would taint the transaction for which he did seek payment even though the latter were found to be legal and supported by other adequate consideration.

The failure of the trial court to dispose of this contention by a finding is regarded as a serious omission by defendant corporation which asserts that it was put in issue because it was mentioned in a trial brief filed after the pretrial hearing and order. At the time of the pretrial hearing the parties had not prepared in writing their legal and factual contentions and they were ordered to prepare and submit trial briefs. This order could not be construed to mean that any contention thereafter made in a trial brief would replace the allegations of the pleadings with the same force and effect as though it had been made before the pretrial hearing and the pretrial judge had ordered the pleadings amended or issues modified.

It is apparent that the trial court heard the evidence on the subject and gave full and serious consideration to the objection thus raised. The affirmative findings sufficiently supported the decision of the trial court that these other uncompensated services by Nongard in no way precluded recovery by him. No additional finding was necessary and if made would have been adverse to defendant corporation.

The final paragraph of the contract above quoted contains a promise to pay Nongard partly in cash and partly in stock of defendant corporation. What part, if any, of the payment should be in stock was to be determined by later happenings. The trial court found that the promise was to pay "either in cash or stock or partly in both." Nongard did not seek or obtain judgment for payment to him in stock and defendant corporation has not offered any payment in stock and has not suggested that payment in cash would be more costly to it. The mention in the contract of this possible means of part payment cannot be regarded as invalidating the agreement.

A question is raised as to the sufficiency of the evidence to support the trial court's findings that Nongard had rendered the services called for by the contract. The total number of shares to be sold was reduced from 300,000 to

275,000 but there is no claim that this was a decision or act of Nongard. This was done by the defendant corporation after Nongard's right to recover had matured. The active interest of other persons in facilitating the final arrangements was certainly expected by all parties and would in no way preclude recovery by Nongard if, as found by the court, he had performed the acts required of him and had earned right to payment. The findings in this regard have adequate support in the evidence and will not be disturbed on appeal.

Two other incidental defenses are suggested which appear to be untenable. They were neither mentioned in the pleadings nor submitted to the trial court for its consideration and require no discussion.

 It is apparent that Scott signed the contract with Nongard at a time when Scott was president of the defendant corporation and was acting for it with the knowledge and approval of a majority of its officers and board of directors and that the benefits accrued to the corporation and were accepted and retained by it and the contract is, therefore, binding upon it. (*Coachella Valley Lbr. etc. Co.* v. *Hollenbeck,* 145 Cal.App.2d 722, 729 [303 P.2d 98].)

The trial court found that Scott signed the agreement in his official capacity as president of defendant corporation, that it was intended that Nongard and the corporation should be the sole contracting parties. The court then declared that the agreement should be reformed to show the signature to be that of the corporation by Scott as president, and made its order accordingly. In suing for declaratory relief Scott was not seeking a modification of the contract but an interpretation of it. A declaration of rights and obligations under a contract which results in a reformation is but a determination of the intention of the parties and of the legal effect of the contract, not a modification of its terms. (*Putnam* v. *Putnam,* 51 Cal.App.2d 696, 699 [125 P.2d 525].)

 It is definitely settled in this state that a disclosed principal may be held liable on a contract made solely in the name of the agent. (*Bank of America* v. *Cryer,* 6 Cal.2d 485, 488-489 [58 P.2d 643] ; *Sunset Milling & Grain Co.* v. *Anderson,* 39 Cal.2d 773, 778 [249 P.2d 24].) The evidence discloses informality and irregularity in the corporate records during the time that the events occurred which are the subject of this controversy. It also appears that if directions of Scott with reference to those records had been faithfully carried out they would have more clearly shown the obligation to be that of the corporation alone.

 Testimony disclosed that persons who apparently were better qualified than Scott in matters of law and finance and who were in positions of trust and authority in the corporation gave him advice which was partly the cause of his signing his own name without showing that he was acting for the corporation as its president. They were also remiss in their duty to assist in seeing that the corporate records were accurate and complete. All of these circumstances were properly considered by the trial court. (Code Civ. Proc., § 1860.) The lack of evidence of a resolution adopted at a formal meeting of the board of directors and entered in its minutes did not require a determination at variance with that reached by the trial court. (*Brainard* v. *De La Montanya,* 18 Cal.2d 502, 511 [116 P.2d 66]; *Mannon* v. *Pesula,* 59 Cal.App.2d 597, 605 [139 P.2d 336].)

The evidence was sufficient to support the findings made by the trial court upon which it based the declaration of the rights of the parties and the order for reformation of the contract. This court will not interfere wth a factual finding of the trial court that is clearly supported by substantial evidence. (*Sumner* v. *Flowers,* 130 Cal.App.2d 672, 674 [279 P.2d 772]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) The result was obviously just and equitable to all parties.

There appears to be nothing in other cases which are brought to our attention which is inconsistent with the views above expressed.

Judgments are affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 14, 1960, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1960.