[Civ. No. 28112. Second Dist., Div. Three. Feb. 1, 1966.]

SAM PASS, Plaintiff and Respondent, v. INDUSTRIAL ASPHALT OF CALIFORNIA, INC., Defendant and Appellant.

Danielson & St. Clair, James O. Ball and George E. Jarvis for Defendant and Appellant.

Ryan & Traxler, Sidney Traxler and G. Bentley Ryan for Plaintiff and Respondent.

SHINN, P. J.—Industrial Asphalt of California, Inc., appeals from a judgment for $35,000 awarded plaintiff, Pass, as a commission claimed for services as a "finder" in the sale by Industrial of multiple assets to Southern Pacific Milling Company.

In 1958 T. M. Evans owned a controlling share of the capital stock of Southern Pacific which owned asphalt, rock and other plants in Southern California. Philip E. Holmes was an officer and authorized representative of Southern Pacific. Defendant Industrial, located in Southern California, owned numerous properties of the same nature as those of Southern Pacific. Wallace E. Hunt was the chief executive officer of Industrial. Sam Pass, located in New York and Pittsburgh, was engaged in the business of "finder," that is to say, he initiated sales and purchases of businesses. United Industrial Corporation was engaged primarily in the asphalt business; at all relevant times Bernard F. Gira was president of United.

The complaint names as defendants, Industrial, Southern Pacific Milling, Hunt and Holmes, and sought recovery of $35,000 from each defendant.

Three causes of action were stated. In the first it was alleged that early in 1958 plaintiff entered into an oral agreement with Industrial and Hunt that if plaintiff found and introduced to them a buyer who would purchase "certain asphalt plants and equipment" from said defendants, they, said defendants, would pay him a commission of 5 percent of the sales price if a sale should be consummated; on or about May 1958, plaintiff found as a prospective buyer Southern Pacific Milling Company and plaintiff arranged to and did introduce Evans and Holmes to Hunt; on or about February 1960, plaintiff found a prospective purchaser, United Industrial, which had acquired or was acquiring Southern Pacific Milling Company and plaintiff arranged to and did introduce Gira to Hunt; about May 1960, United purchased from Industrial "certain plants and equipment" for itself or for Southern Pacific Milling Company for the sum of $700,000; thereby plaintiff earned a fee of $35,000, no part of which has been paid. The second cause of action realleged the express agreement of May 1958, alleged in the first cause of action, and alleged further that between May 1958 and March 1960, at the special instance and request of the defendants, plaintiff rendered services as a finder, "said defendants promised to pay to plaintiff the reasonable value

of such services" and that the services were reasonably worth $35,000.

In the third cause of action it was alleged that between May of 1958 and March of 1960 plaintiff rendered services to Hunt and Industrial "as a finder" at their special instance and request, that defendants agreed to pay the reasonable value of the services and that the same were reasonably worth $35,000.

Pertinent issues defined by the pretrial order were whether plaintiff and defendants entered into the alleged agreement in 1958; if so whether Pass performed the agreement as a finder; if no "such agreement" was made did defendants request Pass to perform services as finder of a buyer for certain plants and equipment, and, if so, whether Pass performed services of the reasonable value as claimed. It is unnecessary to state other provisions of the pretrial order.

Aside from certain contradictions and inconsistencies in the findings which do not affect the conclusions we have reached, the court found all the allegations of the complaint to be true.

Thus the court found there were two express agreements for the services of Pass and also that he rendered services for defendants at their instance and request consisting of his introductions of the representatives of Southern Pacific and United to Hunt. Although it was found that the services were to find a buyer for "asphalt plants and equipment" it was also found that this was not the agreement but that Pass was to find a buyer for "assets" of Industrial and that he did not produce a buyer for such assets.

We have reached the conclusions that there was no evidence that Industrial engaged the services of Pass to find a buyer for any of its property, no evidence that Pass rendered services to find a buyer for any such property and no evidence that any efforts or actions of Pass were the producing cause of the sale that was made.

It was not alleged and the court did not find that the services of Pass were the producing cause of the sale. That indispensable prerequisite to the right to a commission appears to have been ignored.

As to the 1958 negotiations the evidence was that Evans owned a controlling interest in the capital stock of Southern Pacific; he asked Pass, who was coming to California, to look for a buyer for the stock; Pass contacted Hunt and arranged

for a meeting with Evans at San Francisco June 7, 1958; the meeting was held; Hunt for Industrial, made an offer of $2,000,000; Evans asked $2,500,000, which Hunt refused to pay. The negotiations ended. Hunt later offered $2,225,000 but Evans raised his price to $3,000,000. Pass and Hunt testified with respect to the discussions in San Francisco that no mention was made of a possible sale of any property of Industrial; neither Pass nor Hunt mentioned anything except a possible sale of the Southern Pacific stock. Pass testified, and Hunt denied, that Pass was promised a 5 percent commission if a deal was closed with Evans. The question was immaterial, since no sale was made or agreed upon.

Events following the San Francisco meeting were: in July and October 1958 Industrial acquired a ready mix concrete ("batch") plant in Van Nuys and a rock plant in Saugus, with certain other property at a cost of $935,000; Hunt and Masters, a representative of Southern Pacific, discussed a possible sale of these plants to Southern Pacific and agreed on a price of about $700,000, but Evans would not approve a purchase; in January 1960, United Industrial, through Gira, as president, bought the stock of Southern Pacific from Evans, but Southern Pacific remained in business. In this transaction Pass was to receive a commission of $100,000, half of which has been paid. Holmes suggested to Gira that the plants of Industrial for which he had been negotiating might be acquired by Southern Pacific, and Gira authorized Holmes to arrange a meeting with Hunt to discuss the matter. Pass was not present at the discussions between Gira and Holmes. The subject of a possible purchase of plants of Industrial was not mentioned by either Pass or Gira to the other.

Pass conceived the idea of a consolidation of companies and interested Gira in the project. Pass called Hunt from New York and informed him that United had acquired Southern Pacific and that he would like to bring Gira to meet Hunt to discuss a possible merger "between he and twenty-nine asphalt plants that belonged to the Industrial Asphalt Company and the Southern Pacific Milling Company." Pass testified that he told Hunt he was acting as a finder, he was bringing Gira the next day, that if any business resulted he expected a fee of 5 percent and that Hunt said if a deal was made Pass would get it. The testimony of Pass about a fee was categorically denied by Hunt. Both Pass and Hunt testi-

fied that in this conversation a possible purchase of plants or other property of Industrial was not mentioned.

In February 1960, Pass brought Gira to a meeting with Hunt in his office in Los Angeles and introduced the two. When a merger was mentioned Hunt stated, as he had previously stated to Pass on the phone, that he would not be interested unless Industrial was the surviving company. Gira promptly rejected the suggestion and after about five minutes the meeting broke up. Pass left the scene, not to be heard from until 19 months later.

In March 1960, Industrial sold to United and Southern Pacific the concrete plant, the rock plant real estate and other property for $700,000.

All the evidence of the discussions between Pass and Hunt was that there was no agreement whatever that Pass was requested to find a buyer for any property of Industrial. In all material particulars the testimony of Pass was a complete negation of the allegations of his complaint. However, there was an explanation of his extraordinary claim that he had earned a commission from Industrial.

In July or August 1960, Pass telephoned Holmes that he had received from United a check for $35,000 as a commission on the purchase by United of "asphalt plants," and he asked what had taken place; Holmes referred him to the main office of United for information. So far as shown, Pass had no information other than the statement of someone which accompanied the check for $35,000 which he received from United.[1] He did not even trouble himself to learn what had been sold by Industrial. He did not know what a rock plant or a "batch" plant was. He did not hestitate to allege in his complaint that his services were engaged in 1958 for the purpose of finding a buyer for two "asphalt plants and equipment" and that in 1958 he found a buyer for plants which Industrial did not even own at the time. It was not until February 8, 1961, that he conceived the idea of claiming a commission for a transaction that had taken place in March 1960. He demanded of Industrial a commission of $35,000, although he did not know what property had been sold. The demand was promptly rejected. In May 1961 the complaint was filed upon obviously false information given to plaintiff's attorneys. Good faith and fairness were not evidenced by this belated effort to crawl in under the tent.

---

[1]The briefs do not discuss this payment by United.

■ The findings as to the negotiations between Pass, Hunt and Evans are clearly attributable to an egregious misconception of the law relating to the duties and rights of so-called finders. It appears the theory prevailed that if A engages the services of B for compensation to find a purchaser for a property belonging to A and if B produces C who refuses to buy, but later, in a wholly unrelated transaction, sells some of his property to A, the finder is entitled to commission on that sale. Plaintiff suggests that the findings as to the 1958 negotiations can be disregarded, but we think they are significant in connection with the other findings as an indication of the theory upon which the case was decided. As previously stated the evidence upon which the finding of the 1960 agreement was based consisted of the testimony of Pass and Hunt that Gira was introduced to Hunt to discuss a merger of a large number of companies, and nothing else. That is what Pass told Hunt Gira was coming for, it is what Hunt understood and it was the only matter that was discussed in the meeting. There is also the finding on the quantum meruit cause of action to be considered. Insofar as the finding relates to services rendered prior to February 1960, it is manifestly contrary to the established facts. Insofar as it relates to the introduction of Gira to Hunt it is based upon the same evidence as the finding of the 1960 express agreement, namely, the introduction of Gira to Hunt. We see here the same misconception of the law. The court evidently understood that the mere introduction of Gira to Hunt for the discussion of a possible merger of companies, entitled Pass to a commission for the sale by Industrial of a batch plant and a rock plant, with a great deal of other property, to Southern Pacific, with which Pass had no connection whatever.

■ Although a "finder" need not be licensed as a broker and need not operate under a written agreement of employment, they have certain duties and rights in common. ■ In order to earn a commission each must accomplish the purpose for which his services were engaged, and if a transaction is had with a prospect they produce it must be shown, in order to earn a commission, that the services were the procuring cause of that transaction.

It was not alleged in the complaint that the services of plaintiff were the procuring cause of the sale; the pretrial

order did not state that question as one of the issues and the court made no finding upon the issue.

This fundamental prerequisite to the earning of a commission is recognized in the finder's cases. (*Freeman* v. *Jergins,* 125 Cal.App.2d 536 [271 P.2d 210]; *McKenna* v. *Edwards,* 19 Cal.App.2d 327 [65 P.2d 810]; *Nongard* v. *Scott,* 176 Cal.App.2d 650 [1 Cal.Rptr. 526]; *Shaffer* v. *Beinhorn,* 190 Cal. 569 [213 P. 960].)

In support of his contention that his introductions accomplished the purpose of his employment plaintiff refers to these cases.

In *McKenna,* the secretary of defendant was promised a commission for obtaining a loan of $100,000 secured by a pledge of stock; a loan of the desired amount was obtained by a sale of part of defendant's stock, which was satisfactory to the defendant. Plaintiff was allowed to receive the commission although there were conditions of the transaction not originally contemplated. In *Nongard* the agreement was for an issue of 300,000 shares of stock for an underwriting "mutually satisfactory"; when plaintiff brought the parties together the amount was reduced to 275,000. Plaintiff was granted recovery of an agreed commission of $8,500. These were cases in which the agreed upon result was substantially accomplished. They support the contentions of defendants, rather than those of plaintiff.

No case is cited, and we are certain there is none to be found in which it has been held that a finder's fee is earned upon the completion of a transaction which was not within the contemplation of the parties nor within the scope of the services that were engaged. Plaintiff says *Zint* v. *Topp Industries, Inc.,* 184 Cal.App.2d 240 [7 Cal.Rptr. 302], is "squarely in point." The case does not touch upon the present questions. Plaintiff there rendered services in trying to arrange a merger, consolidation or sale of certain assets of Haller. A sale was made to the defendant. Plaintiff sued for $88,011.05 as an agreed fee; the court found there was no express agreement and awarded plaintiff $3,000 as reasonable compensation for extensive efforts which led to the sale. The only point on the appeal was the inadequacy of the judgment. The judgment was affirmed. The case does not aid plaintiff.

Volume 9 California Jurisprudence, Second Edition, pages 242, 243, state, with citation of cases, that a broker must be the procuring cause of a transaction, and " 'Procuring

cause' has been defined as the cause originating a series of events that, without break in their continuity, result in the accomplishment of the prime object of the employment.'' A contrary rule which would allow a finder or broker to obtain a commission for a transaction foreign to the purposes of his employment, and with which he had no connection, would be absurd. One would scarcely dare to employ a finder for a particular purpose if the employment permitted the finder to sit back, do nothing, and claim a fee for transactions completely outside the purposes of his employment. This was the position of Pass with relation to the sale that was made.

In order to earn a commission a finder or broker must bring about a result which substantially accomplishes the purpose of his employment. Anyone desiring authority for this statement will find it in 9 California Jurisprudence, Second Edition, at page 253. Plaintiff's brief, advisedly, does not attempt the impossible of demonstrating that the sale of assets of Industrial was substantially the same thing as the merger of all the plants and assets of Industrial and Southern Pacific.

The crucial questions were whether the introduction of Gira to Hunt was for the purpose of bringing about a sale of assets of Industrial, and whether that introduction was the producing cause of the sale? The uncontradicted evidence requires a negative answer to both questions.

It must have been the theory of the trial court, which appears to have been the argument of plaintiff, that but for the introduction of Gira to Hunt, United would probably not have purchased the properties. It is a specious theory, and contrary to the principle of procuring cause, which does not mean a remote, unrelated and noncontributory cause. The fact is that the purchase of the plants and other property of Industrial was but the consummation of a contemplated purchase of the same property by Southern Pacific for $700,000 which Southern Pacific and Industrial had previously agreed upon as a fair price. This case suggests that although the Legislature has not provided for the regulation of finders, it might be wise to require that their major contracts of employment be in writing.

There are other grounds for reversal, such as the contention that the findings of two express contracts and an implied contract are contradictory and that it is impossible to know from the findings upon what facts found the court based its

judgment, and the further contention that there was no evidence that plaintiff rendered services of any sort at the request of defendants, express or implied. These contentions and other grounds of appeal do not call for decision.

It is clear from the testimony of plaintiff, himself, that he earned no commission through the sale of property of Industrial to Southern Pacific, and that if a retrial were had he could not prevail.

The judgment is reversed; the court is directed to amend its findings and conclusions to accord to the views herein expressed and to enter judgment for defendants.

Kaus, J., concurred.

Ford, J., concurred in the judgment.

A petition for a rehearing was denied March 3, 1966, and respondent's petition for a hearing by the Supreme Court was denied March 30, 1966.