**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMBER JOHNSON, an individual, | No. 23-55520 |
| Plaintiff, | D.C. No. 2:22-CV-00884 |
| v. | |
| LAMELO BALL, an individual, | MEMORANDUM* |
| Defendant, | |

Appeal from the United States District Court
for the Central District of California
Alexander F. Mackinnon, Magistrate Judge

Argued and Submitted May 8, 2024
Pasadena, California

Before: TALLMAN, FORREST, and BUMATAY, Circuit Judges.

Plaintiff-Appellant Amber Johnson ("Johnson") appeals the district court's

order granting partial summary judgment in favor of Defendant-Appellee LaMelo

Ball ("Ball") on her finder's fee claim arising from Ball's endorsement contract with

Puma North America, Inc. ("Puma"). Johnson sued alleging she was owed a finder's

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

fee for the Puma deal based on a claimed oral contract with Ball. The district court granted Ball's motion for partial summary judgment, holding that a reasonable jury could not find in Johnson's favor as "an endorsement or brand relationship can be 'found' only once" and "it is undisputed that Johnson did not find (or source) the relationship between Puma and Ball." Johnson timely appealed. As the parties are familiar with the procedural and factual history of the case, we need not recount it here. We have appellate jurisdiction under 28 U.S.C. § 1291, and we affirm.

The district court did not err in considering Ball's past interactions with Puma. The court emphasized that "[t]he fundamental deficiency in [Johnson's] claims is that Puma and Ball were already considering a brand relationship before Johnson's alleged oral contract with Ball on July 15, 2019." Johnson argues the district court erred in its reasoning because "a reasonable jury could conclude that Johnson was the source of the brand partnership, even though Ball and Puma may have had some [existing] relationship," and that the contract between Ball and Johnson "did not require Johnson to be the source of a brand partner's *relationship* with Ball" but rather "required Johnson to be the source of a brand partner's *partnership* with Ball."

The undisputed facts show, however, that Johnson neither sourced a relationship nor a partnership between Ball and Puma. Johnson did not below—and does not now on appeal—dispute that Puma had been in preliminary discussions with Ball since April 2019, prior to her involvement. Nor did she dispute that on

2

July 23, 2019, the same day Johnson had an introductory call with a Puma representative, Ball and his agents at the Creative Artists Agency ("CAA") had pre-arranged a meeting to discuss, in part, entering into a Puma endorsement deal. Instead, Johnson asks us to find error because "a reasonable jury could conclude that Johnson was the source" of the deal between Ball individually and Puma, based on her brief contact with the company. But the record, including her own admissions of fact, does not support this position.

We review de novo a grant of summary judgment, *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021), and may affirm on any ground supported by the record, *M & T Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d 854, 857 (9th Cir. 2020). While we construe evidence in the light most favorable to the non-moving party, we do not ignore facts on which both parties agree. *See Tschida v. Motl*, 924 F.3d 1297, 1302–03 (9th Cir. 2019). As Johnson did not dispute Ball's preexisting discussions with Puma before the district court, the district court did not err in accepting those facts as true. Moreover, we see no error in considering these prior events, as they are relevant and undisputed evidence that Johnson was not the source of the ultimate brand partnership *or* relationship[1] between Ball and Puma. No reasonable jury could

---

[1] Johnson asks us to draw a legal distinction between a "relationship" and a "partnership" in contracts law. We decline to do so here, as the record demonstrates that the district court used these two terms interchangeably to refer to an endorsement deal, which is what Johnson argues must be the focus of the analysis.

3

find that the company was not already interested in and actively communicating with CAA about Ball endorsing Puma products.

Johnson also challenges the district court's ruling on the basis that "a reasonable jury could conclude that Johnson 'set in motion a chain of events which led without material interruption' to the Puma / Ball brand partnership." But California law is clear that a finder is someone who provides new information or fosters a new relationship that did not or could not exist without their involvement. For example, California contracts law has defined the "procuring cause" of a contract "as the cause originating a series of events that, without break in their continuity, result in the accomplishment of the prime object of the employment." *Rose v. Hunter*, 155 Cal. App. 2d 319, 323 (1957); s*ee Pass v. Indus. Asphalt of Cal., Inc.*, 239 Cal. App. 2d 776, 782–83 (1966) (giving the same definition). "The word 'procure' does not necessarily imply the formal consummation of an agreement," instead "[i]n its broadest sense, the word means to prevail upon, induce or persuade a person to do something." *Rose*, 155 Cal. App. 2d at 323. "The originating cause, which ultimately led to the conclusion of the transaction, is held to be the procuring cause." *Id*.; *Willson v. Turner Resilient Floors*, 89 Cal. App. 2d 589, 595 (1949).

Ball had previous contacts with, and had already expressed individual interest in, Puma through his agents at CAA prior to Johnson's transmittal of a cold email solicitation to Puma. Thus, Johnson has failed to establish as a matter of law that she

procured the endorsement deal.  The district court did not err.

**AFFIRMED.**